STATE OF CONNECTICUT *v.* THOMAS SANDERS
(AC 17804)

O'Connell, C. J., and Foti and Landau, Js.

Argued May 3—officially released September 7, 1999

*Michael O. Sheehan,* special public defender, with whom was *Richard A. Reeve,* for the appellant (defendant).

*Marjorie Allen Dauster,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Gary Nicholson* and *Nicholas J. Bove, Jr.,* assistant state's attorneys, for the appellee (state).

*Opinion*

O'CONNELL, C. J. The defendant, Thomas Sanders, appeals[1] from the judgment of conviction, rendered after a jury trial, of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1), and carrying a pistol without a permit in violation of General Statutes § 29-35.[2]

On appeal, the defendant claims that (1) there was insufficient evidence to sustain his conviction of attempt to commit assault in the first degree, (2) the jury instructions on the attempted assault charge improperly

[1] On December 4, 1996, the defendant filed an appeal (A.C. 16108) of his December 10, 1993 conviction, which was dismissed as untimely. The defendant's appellate rights subsequently were reinstated by stipulation in a habeas corpus proceeding and, in response, the defendant filed this appeal.

[2] The defendant also was charged with attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (2) and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (2). He was acquitted of both those charges.

allowed the jury to reach a verdict under a theory of liability that was neither alleged in the information nor argued by the state, (3) the case should be remanded for resentencing because his conviction on the attempt to commit assault charge influenced the trial court's sentence on the weapons charge and (4) the trial court improperly instructed the jury on the presumption of innocence. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On May 15, 1991, New Haven police department Detectives Gilbert Burton and Robert Coffey responded to a report that the body of a black male, later identified as Curtis Washington, was lying on the floor of a garage on Sherman Avenue. Initial investigation led the detectives to Michael Durant, Claymont Arrington and the defendant, who were the last people seen with Washington before his death. The detectives took several statements from Durant and Arrington, as well as one from the defendant.[3] Initially, both Durant and Arrington gave false statements in which they claimed that Washington had been abducted by two individuals unconnected to the events relevant to this case.

The following day, Durant returned to the police station and gave a tape-recorded statement in which he recanted his abduction story and admitted that he and Arrington, as well as the defendant, had been with Washington when he was killed. Durant stated that the four men had planned to rob some drug dealers on Lamberton Street, that Arrington and the defendant had been armed with pistols, and that Washington had accidentally been killed by Arrington or the defendant. He further stated that the two pistols were a nine millimeter and a .32 caliber, but that he did not know which man had which pistol.

---

[3] All but the first statement given by Durant were tape-recorded and transcribed.

The detectives called Arrington to the police station where he gave a new tape-recorded and transcribed statement. In this statement, Arrington also recanted his story about the abduction and admitted that he had been with Durant, Washington and the defendant when Washington was killed. Arrington described how the four men rode around intending to rob certain drug dealers known to them. He stated that when their car pulled up in front of the house where the drug dealers were, Durant and Washington stayed in the car while he and the defendant left it and entered the yard of the house. He admitted that while he was standing in the middle of the street, he fired one shot from his gun at a boy standing near the house. He further claimed that the defendant fired his gun several times, including shots that went in the general direction of the car in which Washington remained. He contended that he could not have caused Washington's death because he did not shoot in the direction of the car. Arrington further stated that he had the .32 caliber revolver and the defendant had the nine millimeter pistol.[4]

On the same day, the detectives interviewed Durant again. During this interview, Durant stated that the defendant had the nine millimeter pistol and Arrington had the .32 caliber weapon. He further stated that Arrington stood in the street on the left side of the car, and the defendant stood on the sidewalk on the right side of the car.

Several days later, the defendant gave the police a tape-recorded and transcribed statement. In his statement, the defendant claimed that he was in the car with the three other men, and that he had the .32 caliber weapon and that Arrington had the nine millimeter weapon. He further stated that no one discussed a robbery as the men rode in the car and that when they

---

[4] At some point prior to giving this statement, Arrington learned that Washington had been killed by a nine millimeter bullet.

arrived at the scene of the shooting, he went into the house alone to buy beer. The defendant stated that when he came out, Arrington was shooting at the drug dealers. He admitted that as he stood on the porch of the house he fired his gun once into the air, and he estimated that Arrington fired his weapon approximately eight times.

Arrington and Durant thereafter gave police additional statements. Arrington admitted that he had fired the nine millimeter in the direction of the car where Washington was waiting, and that he and Durant had decided to falsely tell the detectives that it was the defendant who had fired the nine millimeter. As a result of his admission, Arrington was charged with manslaughter in the death of Washington and, prior to the commencement of the defendant's trial, pleaded guilty and was sentenced.

At trial, the state called Durant and Arrington as witnesses.[5] Both gave testimony that conflicted with their prior statements in that they refused to incriminate the defendant. Durant testified that the defendant was not present during the robbery and shooting, and Arrington testified that although the defendant was present, he had nothing to do with the robbery and never fired his gun. The state then introduced the tapes and transcripts of the witnesses' prior statements to the police as substantive evidence. The defendant did not object to the admission of the statements as substantive evidence, nor did he request a jury charge limiting the jury's use of the statements to impeachment.

I

The defendant first argues that there was insufficient evidence to sustain his conviction for attempt to commit assault in the first degree. Specifically, the defendant

---

[5] The state also called Burton and Coffey as witnesses.

claims that there was insufficient evidence of his intent to cause serious physical injury.

At the close of the state's case-in-chief, counsel for the defendant raised a general challenge to the sufficiency of the evidence on all but the weapons charge. After the verdict, the defendant also made an oral motion to set aside the verdict on the attempted assault charge. Although neither motion specifically challenged the sufficiency of the evidence on the attempted assault charge, we conclude that these motions effectively preserved this claim. Further, even if this claim were unpreserved, review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), would be warranted.[6] *State* v. *Roy*, 233 Conn. 211, 212, 658 A.2d 566 (1995) (per curiam); *State* v. *Adams*, 225 Conn. 270, 275 n.3, 623 A.2d 42 (1993).

The standard of review for a sufficiency of the evidence claim is well settled. "In reviewing [a] sufficiency [of the evidence] claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994).

"We also acknowledge that the trial court's findings of fact are entitled to great weight and that a conviction

---

[6] In *State* v. *Golding*, supra, 213 Conn. 239–40, our Supreme Court stated that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

based on the facts found by the trier will be affirmed if the trier of fact could reasonably have inferred [from the evidence] that the defendant was guilty beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Osman*, 218 Conn. 432, 436, 589 A.2d 1227 (1991) (per curiam). It is the function of the jury to consider the evidence and judge the credibility of witnesses. *State* v. *Dudla*, 190 Conn. 1, 7, 458 A.2d 682 (1983). The jury is free to accept or reject all or part of a witness' testimony. *State* v. *Brigandi*, 186 Conn. 521, 531, 442 A.2d 927 (1982). "Although some evidence may be inconsistent with the state's theory of the case, the jury is not bound to credit only that evidence to the exclusion of evidence consistent with the state's theory." *State* v. *Salz*, 226 Conn. 20, 29–30, 627 A.2d 862 (1993).

Section 53a-49 provides that to be guilty of an attempt to commit a crime, the defendant must act with the mental state required for the commission of the substantive offense. Under § 53a-59 (a): "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means a deadly weapon or a dangerous instrument . . . ."

"It is axiomatic that a factfinder may infer an intent to cause serious physical injury from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident." (Internal quotation marks omitted.) *State* v. *Commerford*, 30 Conn. App. 26, 34, 618 A.2d 574, cert. denied, 225 Conn. 903, 621 A.2d 285 (1993). Because direct evidence of the accused's state of mind is rarely available, intent is often inferred from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. *State* v. *Sivri*, supra, 231 Conn. 126–27.

In this case, there was sufficient evidence from which the jury could conclude that the defendant acted with the requisite intent to cause serious physical harm to the intended robbery victims. The jury may have chosen not to credit the testimony of Durant and Arrington that the defendant did not participate in the assault on the drug dealers. Instead, the jury reasonably could have relied on the witnesses' pretrial statements in which both stated that the defendant fired multiple shots in the direction of the drug dealers. It also was reasonable for the jury to infer intent to cause serious physical injury to a person from the fact that the defendant fired a gun at that person. See *State* v. *Hamilton*, 30 Conn. App. 68, 80, 618 A.2d 1372 (1993), aff'd, 228 Conn. 234, 636 A.2d 760 (1994).

Further, there is no merit to the defendant's contention that the inconsistency in the prior statements of Durant and Arrington rendered them unreliable and, therefore, rendered it unreasonable for the jury to conclude that the defendant fired a gun at the drug dealers. As we stated previously, it is the function of the jury to resolve inconsistencies in the evidence. *State* v. *Brigandi*, supra, 186 Conn. 531. We cannot say that the jury's conclusions were unreasonable because when the evidence is construed in the light most favorable to sustaining the verdict, there was sufficient evidence to permit the jury to find that the defendant had the requisite intent to cause serious physical injury.[7]

## II

The defendant next claims that the jury instructions on the attempted assault charge improperly permitted the jury to reach a verdict under a theory of liability

---

[7] Because we affirm the judgment as to the conviction of attempt to commit assault in the first degree, we need not address the defendant's third claim regarding resentencing on the charge of carrying a weapon without a permit.

that was neither alleged in the information nor argued by the state. The defendant requests review of this unpreserved claim under *State* v. *Golding*, supra, 213 Conn. 239–40, or under the plain error doctrine pursuant to Practice Book § 60-5. We will review the defendant's claim under *Golding* because the record is adequate for review and the alleged violation is of constitutional magnitude, involving his due process right to an adequately instructed jury. See *State* v. *Cooper*, 38 Conn. App. 661, 666, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995) (improper jury instructions on essential element of crime implicate constitutional right). We must consider next whether the defendant has met his burden of showing, under the third prong of *Golding*, that the alleged constitutional violation clearly exists and that it clearly deprived him of a fair trial. See *State* v. *Golding*, supra, 239–40.

"Our standard of review concerning claims of instructional error is well settled. [J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . The instruction must be adapted to the issues and may not mislead the jury but should reasonably guide it in reaching a verdict. . . . We must review the charge as a whole to determine whether it was correct in law and sufficiently guided the jury on the issues presented at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Elijah*, 42 Conn. App. 687, 691, 682 A.2d 506, cert. denied, 239 Conn. 936, 684 A.2d 709 (1996). "[A]n error in the [charge] requires reversal only if, in the context of the whole instruction, there is a reasonable possibility that the jury was misled in reaching its verdict." (Internal quotation marks omitted.) *State* v. *Anderson*, 212 Conn.

31, 38, 561 A.2d 897 (1989); *State* v. *Pompei*, 52 Conn. App. 303, 308, 726 A.2d 644 (1999).

The following additional facts are relevant to this claim. The long form information charged the defendant with attempt to commit assault by firing a pistol. The trial court first charged the jury generally on attempt crimes relevant to both the attempted robbery and attempted assault charges. The trial court read the language from the statute pertaining to attempt crimes, § 53a-49, and then charged: "So what we are saying is that [while] the actual crime may not have been [committed], there may not have been a robbery in the first degree, there may not have been an assault in the first degree. As far as attempt is concerned, a person attempted and took a substantial step toward the commission of those offenses as I defined them. The first element which the state must prove beyond a reasonable doubt to sustain a conviction of this defendant on these charges is that the defendant had the specific intent [required to commit] the crimes of robbery in the first degree and assault in the first degree."

The court also charged on the substantive offense of assault as follows: "A person is guilty of assault in the first degree when, with intent to cause serious physical injury to another person, he causes such injury to such person and he causes such injury to such person or a third person by means of a deadly weapon. So that assault in the first degree is with intent to cause serious physical injury to another person, [and] he causes such injury to such person or a third person by means of a deadly weapon. . . . [A] person's intention may be inferred from his conduct. . . . [Y]ou may, but you are not required to do so, infer from the fact that a pistol that is capable of causing serious physical injury, including death, was used, and from that you may infer that the defendant intended to cause serious physical injury because a pistol was used, if you find that to be the

case." Later, in defining the term serious physical injury for the jury, the trial court charged: "The term serious physical injury means physical injury which creates a substantial risk of death *and here, of course you have a death* . . . . In short, the injury must be serious rather than minor or superficial. *And I would think that you probably would consider a death to be a serious physical injury.*" (Emphasis added.) It is this language, in addition to a portion of the recharge,[8] referencing Washington's death, that the defendant claims rendered the jury charge improper.

The defendant contends that the jury instructions invited the jury to convict him of first degree assault based on the death of Washington, but that the state's theory was that it was Arrington, not the defendant, who shot Washington, and that the defendant's attempt to commit assault charge was based on his shooting at the drug dealers with the intent to cause them serious physical injury. Although the few sentences in the trial court's exhaustive jury charge challenged by the defendant may have been inartful, "individual instructions are not to be judged in artificial isolation from the overall charge. . . . Thus, an error in the [charge] requires reversal only if, in the context of the whole instruction, there is a reasonable possibility that the jury was misled in reaching its verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Anderson,*

[8] During deliberations, the jury requested reinstruction on attempted assault. On reinstruction, the trial court stated in part: "[Y]ou may, but you are not required to . . . infer from the fact that a pistol that is capable of causing serious physical injury, including death, was allegedly used . . . that the defendant intended to cause serious physical injury." The trial court defined assault in the first degree, stating in part: "And to constitute the offense of assault with a deadly weapon in the first degree, actual physical injury must be inflicted . . . . [W]e are not concerned [in this case] with the . . . actual commission of an actual physical injury, *although you may so find in this case,* because the defendant is being charged with the attempt to commit this offense." (Emphasis added.)

supra, 212 Conn. 37–38; *State* v. *Pompei,* supra, 52 Conn. App. 308.

In the present case, our review of the charge in its entirety leads us to conclude that the trial court properly instructed the jury on the elements of the crime of attempt to commit assault in the first degree.

### III

The defendant's final claim, raised in his supplemental brief,[9] is that the trial court improperly instructed the jury on the presumption of innocence and reasonable doubt in violation of his due process rights.[10] Specifically, he asserts that the instruction that "the law was made to protect society and innocent persons, and not to protect guilty ones" undermined the principal that an accused is to be afforded a presumption of innocence, as well as the principle requiring the state to establish guilt beyond a reasonable doubt. Our Supreme Court's ruling on this issue in *State* v. *Schiappa,* 248 Conn. 132, 167–75, 728 A.2d 466 (1999), is controlling.

In *Schiappa,* the court considered whether a jury instruction, substantially the same as the one challenged in this case violated the defendant's due process rights. The court held that "[a]lthough we disapprove of the challenged language and, pursuant to our supervisory authority over the administration of justice, direct our trial courts to refrain from using the challenged language in future cases, we nevertheless reject the defendant's constitutional claim." Id., 168.

As was the case in *Schiappa,* the trial court in this case, in clear and legally correct terms, instructed the jury in detail regarding the presumption of innocence

---

[9] This court granted the defendant's request to file a supplemental brief on June 23, 1998.

[10] The defendant at trial failed to object to the challenged instruction and, therefore, seeks review under *State* v. *Golding,* supra, 213 Conn. 239–40. The record is adequate for review and, consequently, we will review the defendant's claim.

and reasonable doubt. In light of *Schiappa,* and after reviewing the trial court's jury instructions as a whole, we conclude that the defendant's constitutional claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.