STATE OF CONNECTICUT *v.* JOSEPH N. DWYER, SR.
(AC 18315)

Foti, Lavery and Schaller, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued February 28—officially released August 8, 2000

*Aaron J. Romano*, special public defender, for the appellant (defendant).

*Eileen McCarthy Geel*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Anne F. Mahoney*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Joseph N. Dwyer, Sr., appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49[2] and

---

[2] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does . . . anything which, under the circumstances as he believes them to be, is an act . . . constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

53a-134 (a) (4).[3] He claims that (1) the state's attorney engaged in prosecutorial misconduct that deprived him of his constitutional right to a fair trial and (2) the trial court improperly instructed the jury regarding intent. We affirm the judgment of the trial court.

The following facts are relevant to the resolution of this appeal. On March 21, 1995, the defendant entered a Glastonbury convenience store, wearing a disguise and displaying a firearm. He announced to the employee on duty that he was conducting a "stickup" and requested all the money from the cash register.[4] The employee refused to cooperate and instead telephoned the Glastonbury police department. The defendant then drove away at a normal rate of speed in a vehicle that had a bag partially obscuring the rear license plate. The defendant was apprehended a short while later by Glastonbury police officers and charged with attempt to commit robbery.

At the time of the incident, the defendant was a Hartford police officer who was not assigned to active duty because he was receiving his full salary as a result of a workers' compensation claim. While he was a member of the police department, he received special training in crime prevention and advised merchants about security measures.

For several years prior to the robbery incident, the defendant had been treated for depression and sub-

---

[3] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 . . . he or another participant in the crime . . . (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol . . . or other firearm . . . ."

[4] The employee testified that the defendant emanated an odor of alcohol, but that his tone was calm, and that he spoke with no slurred speech and had no trouble balancing himself.

stance abuse problems. During the months immediately preceding the robbery attempt, the defendant went through a divorce and was experiencing financial problems. On the night of the incident, the defendant consumed several alcoholic beverages and had taken three prescription medications: Fiorinal with codeine, Xanax and Wellbutrin.[5]

At trial, the defendant asserted that he was not responsible for the attempted robbery because his intoxication, which resulted from the combination of alcohol and medication, prevented him from forming the specific intent required to commit that crime. On the basis of its verdict, the jury did not find that the defendant was unable to form the requisite intent. Additional facts will be discussed where relevant to the issues on appeal.

I

The defendant first claims that the state's attorney committed prosecutorial misconduct during her cross-examination of his expert witness and during the state's closing argument, thereby effectively depriving him of his right to a fair trial under article first, §§ 8[6] and 9,[7] of the constitution of Connecticut, and the fifth[8] and fourteenth[9] amendments to the United States constitution.

---

[5] The defendant testified that he did not know how many drinks he consumed or how many pills he took that night.

[6] Article first, § 8, of the constitution of Connecticut provides in relevant part: "In all criminal prosecutions, the accused shall have a right to . . . trial by an impartial jury. No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

[7] Article first, § 9, of the constitution of Connecticut provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

[8] The fifth amendment to the United States constitution provides in relevant part: "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."

[9] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

The following additional facts are necessary for the resolution of this claim. At trial, the defendant presented the testimony of an expert witness, Austin McCawley, his treating psychiatrist, to establish that at the time of the robbery attempt, the defendant was unable to form the requisite intent because he was under stress, had taken prescribed medications and had consumed alcoholic beverages. McCawley testified that he believed that the defendant did not have control over his conduct at the time of the criminal activity.

During cross-examination, the state's attorney inquired as to whether McCawley was aware of a report prepared during the defendant's treatment at the Institute of Living in Hartford (institute) and that the defendant had stated to the institute staff that he had had a blackout, which he saw as protection from criminal liability. McCawley responded that he was not aware that the defendant had made that statement. The state's attorney also asked whether McCawley was aware that the defendant had described himself to the institute staff as someone who was able to deceive people. McCawley responded that "[h]e may have done that."

The defendant did not object to either of those questions and answers, and he focused on the report during his redirect examination of McCawley. During closing argument, the state's attorney referred to McCawley's testimony, stating that McCawley had not known that the defendant had told staff at the institute that because of his claimed blackout, he had "this liability thing covered" and that he was "able to deceive anyone."

Because the defendant did not raise the allegations of prosecutorial misconduct at trial, he can obtain review on appeal only under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[10] or the plain error

[10] In *State* v. *Golding*, supra, 213 Conn. 239–40, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional

doctrine. Practice Book § 60-5.[11] "When the verdict in a criminal case is challenged on the basis of allegedly prejudicial remarks made by the prosecutor, the defendant bears the burden of proving such prejudice within the context of the trial as a whole." (Internal quotation marks omitted.) *State* v. *Shanks*, 34 Conn. App. 103, 109, 640 A.2d 155, cert. denied, 229 Conn. 921, 642 A.2d 1216 (1994). "It is well established that [w]e will not afford *Golding* review to [unpreserved] claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Perry*, 58 Conn. App. 65, 69, 751 A.2d 843 (2000); see *State* v. *Atkinson*, 235 Conn. 748, 769, 670 A.2d 276 (1996); *State* v. *Williams*, 231 Conn. 235, 246, 645 A.2d 999 (1994). After a careful review of the record, we conclude that the state's attorney's questions to McCawley and her comments during closing argument did not so infect the trial with unfairness as to deny the defendant his rights to a fair trial. Accordingly, his claim fails to satisfy the third prong of *Golding*. See *State* v. *Banks*, 58 Conn. App. 603, 620–21, 755 A.2d 279 (2000).

Because this claim, however, involves an evidentiary matter; see *State* v. *Henry*, 27 Conn. App. 520, 529, 608 A.2d 696 (1992); we note that "the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial

magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis added.)

[11] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

of a specific constitutional right, no constitutional issue is involved." (Internal quotation marks omitted.) *State* v. *Campbell*, 225 Conn. 650, 657, 626 A.2d 287 (1993). "The trial court has broad discretion in ruling on the admissibility of evidence . . . . The determination of the relevancy and remoteness of evidence is within the sound discretion of the trial court. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Rivera*, 56 Conn. App. 182, 188, 742 A.2d 387 (1999), cert. denied, 252 Conn. 927, 746 A.2d 791 (2000). The court also has "broad discretion in determining the scope of cross-examination"; *State* v. *Cooper*, 227 Conn. 417, 431, 630 A.2d 1043 (1993); and questions "designed to rebut, impeach, modify, or explain direct testimony [are] within the scope of the direct examination." (Internal quotation marks omitted.). Id., 432. A prosecutor, however, may not appeal to the emotions, passions or prejudices of jurors, and should not inject extraneous matters into a case that divert the jury from its duty to decide the case solely on the evidence presented. *State* v. *Williams*, 41 Conn. App. 180, 187, 674 A.2d 1372, cert. denied, 237 Conn. 925, 677 A.2d 950 (1996).

The defendant requests us to conclude that the questions posed to McCawley by the state's attorney and her reference in closing argument to his answers constituted a pattern of prosecutorial misconduct warranting reversal of the judgment of conviction. The questions by the state's attorney, however, were proper to verify the basis for McCawley's opinion and to test his knowledge regarding the defendant. They were not designed to distract the jury or to appeal to its emotions.

During the state's attorney's cross-examination of McCawley, the following colloquy occurred:

"[Assistant State's Attorney]: "[A]re you aware, sir, that when the defendant spoke with the medical personnel in the [institute] . . . he told them that he saw his blackout as some protection from liability?

"[Witness]: I don't recall him saying that.

"[Assistant State's Attorney]: Okay. You're not aware of that?

"[Witness]: No.

"[Assistant State's Attorney]: And are you aware of the fact that when he spoke with them . . . that he described himself as someone who was able to deceive anybody?

"[Witness]: He may have done that, yes."

The defendant did not object to this line of questioning. In fact, the defendant asked about the report during his direct examination of McCawley and further inquired about it on redirect. "[A] party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the issue is said to have opened the door to rebuttal by the opposing party." (Citations omitted; internal quotation marks omitted.) *State* v. *Fuller*, 56 Conn. App. 592, 621, 744 A.2d 931, cert. denied, 252 Conn. 949, 748 A.2d 298 (2000).

The questions posed by the state's attorney during cross-examination of McCawley were proper because they were responsive to McCawley's direct testimony. The defendant introduced the issue of his mental state, and he presented expert testimony from McCawley that he was unable to form the requisite intent to commit the crime charged. To respond to that testimony, the state properly was allowed to question the basis for McCawley's conclusion and to test his knowledge.

Accordingly, we are persuaded that the state's attorney did not commit misconduct and that the court did not clearly abuse its discretion in permitting McCawley's testimony. Additionally, the state's attorney's remarks during closing argument regarding that evidence were reasonable in light of the evidence and, therefore, were not improper.[12]

[12] During closing argument, the state's attorney argued as follows: "[McCawley] also doesn't know . . . that when the defendant went into the [institute] that he told those folks there, 'Oh, yeah, I got this liability thing covered on this. I'm going to say I had a blackout.' And he also tells them that he's able to deceive anyone."

The defendant then objected, arguing, "That's not in evidence at all." The state's attorney responded by pointing out that McCawley had testified that he was unaware of those statements. The court then reminded the state's attorney that she could comment only on the evidence. The state's attorney then continued her closing argument.

After both sides completed their closing arguments, the defendant reiterated his objection to the portion of the state's argument quoted above. The court then reminded the defendant that the questions posed to McCawley and his responses were not objected to. The following colloquy then occurred:

"[Defense Counsel]: [The assistant state's attorney] has a right to do that . . . .

* * *

"The Court: So, it's not being offered as something the defendant says. It's simply being . . . referred to as a fact that [McCawley] was not aware of, that aspect of it.

"[Defense Counsel]: Right. . . .

* * *

"The Court: "[A]ll counsel stated was what [McCawley] said in response to [her] question. And the question and the response [were] before the jury during the course of the trial. . . .

* * *

"[Assistant State's Attorney]: [A]ll I have done in argument is to repeat something which I asked which was not objected to during the course of the trial.

"The Court: Yes. . . . Well, I certainly understand [defense counsel's] point. But I think that [the assistant state's attorney] can comment on the testimony of [McCawley] in terms of the question asked . . . and the answer [given]. . . . [And] if there is some sort of [an] instruction you wish, then I'll certainly consider that. But it seems to me that once the question and the answer [are] before the jury, then [the assistant state's attorney] can, in [closing] argument, simply refer to that answer . . . . And what was asked [of McCawley] and . . . his answer to a particular question . . . is evidence in the case. . . ."

Prior to the court's instructions to the jury, the court asked both counsel whether they had anything they wanted to bring to the court's attention. The defendant's counsel responded, "No." Accordingly, the defendant made a tactical choice to decline to request curative instructions.

On the basis of our review of the questions by the state's attorney during cross-examination of McCawley and her comments during closing argument, we conclude that the defendant can not establish that there was a violation of his constitutional rights to a fair trial. See *State* v. *Henry*, supra, 27 Conn. App. 529.

The defendant also cannot prevail under the plain error doctrine. See Practice Book § 60-5.[13] "[R]eview under the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Niemeyer*, 55 Conn. App. 447, 457–58, 740 A.2d 416, cert. granted on other grounds, 252 Conn. 916, 917, 744 A.2d 437, 747 A.2d 517 (1999). Additionally, the claimed error must be both clear and harmful enough such that a failure to remedy the error would result in manifest injustice. *State* v. *Miller*, 202 Conn. 463, 469, 522 A.2d 249 (1987). The defendant's claim does not meet that standard.

## II

The defendant next claims that the court improperly instructed the jury regarding intent. The defendant claims that the instruction was inadequate because the court explained that the jury must find that he was so intoxicated that he could not form either the specific intent or general intent associated with the crime before

---

[13] See footnote 11.

it could consider the negating effect of intoxication. We do not agree.

The defendant did not raise this claim to the trial court and therefore, as in part I of this opinion, he may seek review only under the *Golding*[14] or plain error doctrines.[15] Because the record is adequate for review and the alleged violation is of constitutional magnitude involving the defendant's right to due process, we must determine whether the defendant has met his burden of establishing, pursuant to the third prong of *Golding*, that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial. See *State* v. *Golding*, supra, 213 Conn. 239–40.

In reviewing a constitutionally based challenge to the court's instructions to the jury, we must determine "whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . [W]e must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." (Internal quotation marks omitted.) *State* v. *Griffin*, 253 Conn. 195, 206, 749 A.2d 1192 (2000). "To pass constitutional muster, jury instructions must be correct in law, adapted to the issues in the case and sufficient to guide the jury in arriving at a verdict. . . . The test that we apply to any part of a charge is whether the charge as a whole presents the case to a jury in such a manner that no injustice is perpetrated." (Citation omitted.) *State* v. *Walsh*, 52 Conn. App. 708, 721, 728 A.2d 15, cert. denied, 249 Conn. 911, 733 A.2d 233 (1999). "[R]eversal [is required] only if, in the context of the whole instruction, there is a reasonable possibility that the jury was misled in reaching its verdict." (Internal quotation marks omit-

[14] See footnote 10.
[15] See footnote 11.

ted.) *State* v. *Sanders*, 54 Conn. App. 732, 740, 738 A.2d 674, cert. denied, 251 Conn. 913, 739 A.2d 1250 (1999).

According to the defendant, the court failed to instruct the jury properly on the issue of intent, which is an essential element of the crime of attempt to commit robbery,[16] thereby violating his constitutional rights to due process. A proper charge as to this element would instruct the jury that if it found that the defendant was too intoxicated to form the specific intent to commit the crime, then the fact that he was intoxicated could be used to negate that element, but that no matter how intoxicated the defendant was, intoxication could not be used to negate the element of general intent. The defendant claims that the court's instruction impermissibly informed the jury that it must find that he was so intoxicated that he could not form either the specific intent or general intent associated with the crime before it could consider the negating effect of intoxication.[17]

---

[16] The statutory definition of attempt, found in General Statutes § 53a-49, requires specific intent to commit the underlying offense. The crime of robbery in the first degree, as defined in General Statutes § 53a-134 (a) (4), consists of larceny committed by the use or threat of the use of force, with the specific intent to deprive another of property. The statute defining the effect of intoxication on the finding of guilt, General Statutes § 53a-7, provides that intoxication may negate an element of the crime charged. Voluntary intoxication, however, may negate specific intent, but not general intent. *State* v. *Shine*, 193 Conn. 632, 638, 479 A.2d 218 (1984).

[17] The court instructed the jury in relevant part as follows: "[I]t now becomes my duty . . . to instruct you concerning the law which you are to apply . . . .

\* \* \*

"[T]he defendant is presumed to be innocent until proven guilty. . . .

"The burden to prove the defendant guilty of a crime with which he is charged is upon the state. The defendant does not have to prove his innocence. This means that the state must prove beyond a reasonable doubt each and every element necessary to constitute the crime charged. . . .

"In this particular case, there has been asserted the affirmative defense of mental disease or defect . . . .

"The defendant must establish the affirmative defense by a preponderance of the evidence. . . . [I]n this case, the affirmative defense [is] lack of capacity due to mental disease or defect. . . .

\* \* \*

When the court completed its charge to the jury, the defendant did not except to the court's language

"That brings me . . . to the subject of intent. Intent relates to the condition of the mind of the person who commits the act, his purpose in doing it. . . . [A] person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such result or to engage in such conduct. . . .

"The burden of proving the required intent for a crime beyond a reasonable doubt rests upon the state. . . .

\* \* \*

"There was evidence offered that the defendant was intoxicated at the time of the alleged attempted robbery; that is, that he was under the influence of one or more intoxicants, namely, alcohol [and prescription drugs]. . . . [T]he defendant . . . maintains that he was . . . too intoxicated to have formed the specific intent elements of the crime . . . .

"[T]he intent elements of the crime of attempted robbery in the first degree are that the defendant intentionally did anything which, under the circumstances as he believed them to be, was an act constituting a substantial step in the course of conduct planned to culminate in the commission of the crime of robbery and that he specifically intended to commit the crime of robbery and that he specifically intended to deprive another of property and to appropriate the same to himself. . . .

"I will now instruct you on the law of intoxication and how it relates to the intent elements of the crime of attempted robbery in the first degree. . . . [I]ntoxication itself is not a defense to a criminal charge but . . . evidence of the defendant's intoxication may be offered by the defendant whenever it is relevant to negate an element of the crime charged.

"Now, intoxication means a substantial disturbance of mental and physical capacities resulting from the introduction of substances into the body, including alcohol and drugs. As applied here, it means that if you find that the defendant was so intoxicated that he was not mentally able to form the intent required for the commission of the crime, then the intent elements of the crime would not be proven and you would be required to acquit the defendant of that charge.

"This does not mean, however, that the defendant [must prove] that he was too intoxicated to form the intent required as an element of the crime. The state retains the burden of proof beyond a reasonable doubt on this issue of intent as on all the other elements of the crime. . . . You must, if you are to find for the defendant on this issue, find that while he was committing the crime of attempted robbery . . . that he was so intoxicated that his mind was incapable of forming the required *general and specific intent* elements of the crime . . . .

"If, however, you find that he was not intoxicated or that he was intoxicated but not so extremely so that he could not form the intent required, you should disregard the evidence of his intoxication as it pertains to the defendant's formulation of and acting with the *general and specific intent*

regarding specific and general intent. The jury began its deliberations the next day. Shortly thereafter, the court received a note from the jury regarding the definitions of diminished capacity, intent, intoxication and voluntary. The court then issued a supplementary charge.[18] The defendant did not object to this supple-

*required* . . . . If you find that the defendant was intoxicated at the time of the crime, you may take that fact into consideration in determining whether he was in such a state of intoxication as to be incapable of forming the required *general and specific intent*, which are necessary elements for the commission of the crime of attempted robbery in the first degree. . . .

"You will recall I have instructed you that the state must prove all of the elements of the crime of attempted robbery beyond a reasonable doubt. One element of that crime . . . is the required *general and specific intent* . . . that he specifically intended to commit a robbery . . . in the first degree, and that he specifically intended to deprive another of property or appropriate the same to himself. Those are the intent elements that the state must prove beyond a reasonable doubt. . . .

"I [must] explain to you both the elements of the crime of robbery in the first degree . . . and the elements of the separate crime of attempting to commit that crime . . . .

"A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person . . . .

"To establish a larceny, the state must prove that the defendant wrongfully took . . . property from an owner and at the time he intended, he specifically intended, to deprive the owner of it . . . .

"[To establish the crime of attempted robbery,] the state is required to prove beyond a reasonable doubt . . . that the defendant must have acted with the kind of intent required for the commission of the crime which he was attempting . . . .

"[The defendant] must have specifically intended to commit a robbery and . . . specifically intended to commit a larceny by the use of force . . . and he must have acted with the specific intent required for the commission of a larceny; that is, he must have specifically intended to deprive the owner of property . . . .

"It is the defendant's position . . . that the state has not proved beyond a reasonable doubt the required intent element of this crime . . . . The [defendant] points to the evidence . . . of his mental condition as testified to by [McCawley] . . . as diminishing his capacity to formulate and have the required intent. . . ." (Emphasis added.)

[18] The court instructed the jury in relevant part as follows: "The burden of proving the required intent beyond a reasonable doubt is on the state. . . . [O]ne of the elements of that crime . . . is the *general and specific intent elements* . . . . [The defendant must have] specifically intended to

mental charge or to a third supplemental charge delivered later that day. Nevertheless, the defendant now points to isolated portions of the jury charges in support of his claim that he was deprived of his constitutional rights to a fair trial.

Our review of the charge as a whole, however, reveals that it is not reasonably possible that the jury was misled as to the state's burden of proof on the element of specific intent and the relationship of intoxication to

commit the crime of robbery in the first degree . . . .

"[E]vidence was presented in this case of a diminished . . . mental capacity on the part of the defendant at the time of the subject incident. . . .

"[T]he state must prove that at the time of the incident the defendant acted intentionally and with specific intent.

"[The defendant must have] intended to commit a robbery, a robbery in the first degree. And further, that he specifically intended to deprive another of property . . . .

"[E]vidence of the defendant's intoxication may be offered by the defendant whenever it is relevant to negate an element of the crime charged.

"You must, if you are to find for the defendant on this issue, find that while he was committing the crime of attempted robbery in the first degree . . . that he was so intoxicated that his mind was incapable of forming the required *general and specific intent elements* of the crime . . . .

"If, however, you find that [the defendant] was not intoxicated, or that he was intoxicated but not so extremely so that he could not form the required intent, you should disregard the evidence of his intoxication as it pertains to the defendant's formulation of and acting with the general and specific intent required for the commission of the crime of attempted robbery in the first degree. . . .

"If you find that the defendant was intoxicated at the time of the crime, you may take this fact into consideration in determining whether he was in such a state of intoxication as to be incapable of forming the required and specific intent, which are necessary elements for the commission of the crime of attempted robbery in the first degree. . . .

"You must first decide, then, whether the defendant was intoxicated at the time of the alleged crime. And second, whether he was capable of possessing an intent to commit the acts constituting the crime of attempted robbery in the first degree. . . . [T]he defendant does not have to prove that he was so intoxicated. The state has the burden of proving beyond a reasonable doubt that the defendant was capable of forming the required intent. Any degree of intoxication and not merely total intoxication may be considered in determining whether the defendant possessed at the time the requisite intent. . . ."

that burden. At the beginning of its instruction, the court reminded the jury that the defendant is presumed to be innocent, that the burden is on the state to prove beyond a reasonable doubt all of the elements of the crime of attempted robbery and that the defendant is not required to prove his innocence. The court then instructed the jury on the affirmative defense of mental disease or defect, explaining that the defendant can establish this defense by a mere preponderance of the evidence. The court thereafter instructed the jury as to intent, reiterating that it is the state's burden to prove beyond a reasonable doubt that the defendant had the requisite intent at the time of the crime. The court then discussed the subject of intoxication, reminding the jury that the defendant asserted that he was too intoxicated to have formed the specific intent elements of the crime. Finally, the court instructed the jury as to the elements of the crime of attempt to commit robbery in the first degree, explaining that the crime requires that, at the time of the incident, the defendant acted intentionally and with the required specific intent to commit the crime of robbery and that he specifically intended to deprive another of property.

Although a few statements in the jury charge, in isolation, may have been incorrect, jury instructions "are not to be judged in artificial isolation from the overall charge. . . . [A]n error in the [charge] requires reversal only if, in the context of the whole instruction, there is a reasonable possibility that the jury was misled in reaching its verdict." (Citation omitted; internal quotation marks omitted.) Id., 740. The jury charge, as a whole, reveals that the court properly instructed the jury that intoxication could be considered in determining whether the state had established the requisite intent. The court explained the statutory definition of intoxication contained in General Statutes § 53a-7 and clearly explained the role of intoxication evidence in

negating the element of intent required for conviction of a specific intent crime. The court also instructed the jury that the defendant did not have to prove he was too intoxicated to form the necessary intent, but rather that the state retained the burden of proving beyond a reasonable doubt the issue of intent as well as all of the other elements of the crime.

The charge, read in its entirety, clearly demonstrates that the court unequivocally stated that the state has the burden of proving that the defendant had the specific intent to commit robbery in the first degree and that if the jury found that the defendant was intoxicated at the time of the commission of the crime, it then could determine that his voluntary intoxication negated that intent. Moreover, the court instructed the jury that if it determined that the defendant was too intoxicated to have formed the specific intent required to commit the crime of attempted robbery, it must acquit him of that charge. Accordingly, the court did not inform the jury, as the defendant asserts, that it must find that the defendant was too intoxicated to have formed the general and specific intent elements of the crime before it could consider the effect of the intoxication upon intent.

Not fewer than seventeen times in its initial instruction and not fewer than eight times in its supplemental instruction did the court properly instruct the jury as to the state's burden to prove beyond a reasonable doubt that the defendant acted with the required specific intent to commit the crime of attempt to commit robbery. The court, therefore, adequately informed the jury that the state had the burden of proving that the defendant possessed the requisite intent. The jury was repeatedly instructed on the requirements of finding specific intent as an element of the crime and that the state had the burden of proving that element beyond a reasonable doubt. We are persuaded that the challenged

instructions, when considered in the context of the entire charge, neither created an unlawful threshold for the jury's consideration of intoxication nor weakened the state's burden of proof as to specific intent. The jury, therefore, could not reasonably have been misled as to either the state's burden of proof on the element of intent or the effect of the defendant's evidence of intoxication in determining whether the state proved the requisite intent beyond a reasonable doubt.

We are persuaded, on the basis of our review of the court's charge in its entirety, that the jury instructions as to intent were proper. Accordingly, the defendant has failed to demonstrate that a violation of his constitutional rights clearly occurred and clearly deprived him of a fair trial. His claim, therefore, fails to satisfy the third prong of *Golding*. Further, the defendant's claim fails to meet the stringent criteria of the plain error doctrine. See Practice Book § 60-5.

The judgment is affirmed.

In this opinion the other judges concurred.