STATE OF CONNECTICUT *v.* NICHOLAS APONTE
(AC 20233)

Spear, Dranginis and Hennessy, Js.

Argued May 31—officially released October 23, 2001

*Neal Cone*, assistant public defender, for the appellant (defendant).

*Nancy L. Chupak*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James G. Clark*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Nicholas Aponte, appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c,[1] attempt to commit robbery in the first degree

---

[1] General Statutes § 53a-54c provides in relevant part: "A person is guilty of [felony] murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (1) Did not commit the homicidal act or in any

in violation of General Statutes §§ 53a-49[2] and 53a-134 (a) (2),[3] and conspiracy to commit robbery in the first

way solicit, request, command, importune, cause or aid the commission thereof; and (2) was not armed with a deadly weapon, or any dangerous instrument; and (3) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (4) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

[2] General Statutes § 53a-49 provides: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) of this section unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime.

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a) of this section, it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

[3] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous

degree in violation of General Statutes §§ 53a-48[4] and 53a-134 (a) (2). He claims that (1) the trial court's instructions to the jury on the defense of duress were inadequate and misleading, and (2) the prosecutor made prejudicial remarks in his closing argument that denied the defendant his right to a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 11, 1995, at approximately 1 a.m., the defendant and the defendant's cousin, Jason Casiano, the defendant's brother, Miguel Rodriguez, and Rodriguez' friend, Adam Strong, attempted to rob a Subway sandwich shop in North Haven. One of the men shot and killed an employee during the attempt. Thereafter, the defendant was taken into custody on an unrelated matter, gave a statement to the police implicating himself and the other participants in the Subway crimes,[5] and was tried before a jury.

Prior to the jury charge, defense counsel argued for a mistrial on the basis of improper remarks by the prosecutor during his closing argument. The court denied the motion, noting that counsel's concerns

instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. . . ."

[4] General Statutes § 53a-48 provides: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.

"(b) It shall be a defense to a charge of conspiracy that the actor, after conspiring to commit a crime, thwarted the success of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

[5] Rodriguez and Strong also admitted their parts in the crimes and testified for the state at the defendant's trial.

would be covered in its general instructions to the jury. After the jury found the defendant guilty on all three charges, the defendant filed a motion for a new trial. The court denied the motion and this appeal followed. Additional facts will be provided as necessary.

## I

The defendant first claims that the court's instructions to the jury on the defense of duress were inadequate and misleading. We disagree.

## A

The defendant claims that the court's instructions to the jury improperly failed to include his entire requested charge on the defense of duress. He claims that without the excluded language, the instructions did not adequately inform the jurors that even if they rejected the defense of duress, evidence of duress could raise reasonable doubt as to the defendant's specific intent to commit the charged offenses. The defendant seeks review of his unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and the plain error doctrine. Practice Book § 60-5.

At trial, Rodriguez testified that the defendant told Casiano before they entered the shop that he did not want to go through with the robbery because he was having second thoughts about getting caught. Rodriguez testified that Casiano, who had been drinking, "flipped," pointed his gun at the defendant and stated, "you're not punking out on me now." Strong testified that he was "somewhat scared" of Casiano and that Casiano had been handling the gun like a "cowboy" for two days prior to the robbery attempt. Strong also wrote a letter to the defendant after their arrest in which he stated that Casiano had forced the defendant to go into the Subway shop.

On the basis of that evidence, the defendant submitted a request to charge the jury on the defense of duress. The court, however, did not include all of the defendant's proposed language in its instructions,[6] specifically, that "[d]uress is inconsistent with guilt, and if

[6] The court gave the following charge: "Now, the defendant has asserted the defense of duress. . . . Duress is defined in the General Statutes as follows . . . 'In any prosecution for an offense it shall be a defense that the defendant engaged in the proscribed conduct because he was coerced by the use or threatened imminent use of physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist. The defense of duress shall not be available to a person who intentionally or recklessly places himself in a situation in which it is probable that he will be subjected to duress.' That's the end of the statute.

"Under this defense, a defendant may be excused from legal responsibility for the crime charged on the ground that he was under duress at the time of the criminal activity. You are to apply an objective standard in determining whether the defendant was under duress; that means that the force or threatened force to the defendant's body must be such that a person of reasonable firmness in the defendant's situation would have been unable to resist it.

"Before you can find that criminal activity is justified by the defense of duress, you must find that the defendant engaged in the criminal activity because the defendant was coerced by the use or threatened . . . imminent use of physical force upon him or a third person.

"If the defendant would have engaged in the criminal activity whether or not there was a threat, then his actions were not caused by that threat.

"Furthermore, if there was a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, then you must find that the defendant was not under duress.

"The rationale of the defense of duress is that even though the accused has done the act the crime requires, his conduct, which violates the literal language of the criminal law, is justified because he had thereby avoided a harm of greater magnitude.

"To summarize. There are four requirements to the defense of duress. One, the defendant was coerced to engage in the criminal conduct. Two, the coercion was by the use or threatened imminent use of physical force on him or on the third person. Three, the degree of force or threatened imminent force was such that a person of reasonable firmness in the defendant's situation would have been unable to resist it. And four, the defendant had no reasonable legal alternative to violating the law.

"Now, because the defense has raised the defense of duress, the state has the burden of disproving the defense beyond a reasonable doubt. If you

you find that it exists, *or if you find that it raises in your mind a reasonable doubt about the defendant's guilt, you must find the defendant not guilty,"* and "[i]f you find that the *defense* of duress exists or if you find that it raises a reasonable doubt in your mind about the defendant's guilt, you must find [him] not guilty." (Emphasis added.) The court did instruct, however, that the jury should consider "all of the evidence" in reaching its verdict. After the jury was excused, defense counsel objected to the omission of the quoted language, arguing that the claim of duress itself could create reasonable doubt sufficient to negate the element of specific intent for the charged offenses.[7]

The state responded that the proposed language was unnecessary, that the state had the burden not only to disprove duress, but also to prove intent for each of the charged crimes, and that if the evidence raised a reasonable doubt as to intent, duress or any other element of those crimes, the jury could not find the defendant guilty. The court ruled against the defendant.

During its deliberations, the jury requested that the court reporter read back that portion of the charge relating to the relevant statutes. Before the court reread the charge, however, defense counsel again requested that the omitted instructions be included and that the jury be advised that the defense of duress could be used to negate the element of specific intent for the charged offenses. The court denied the defendant's request, finding its original charge to be correct. The

find that the state has failed to disprove the defense of duress, then you must find the defendant . . . not guilty on counts one and two. If you find that the defense of duress has been disproved by the state, then you should find the defendant guilty, provided, however, that you find that all of the other elements of the crimes charged have been proven beyond a reasonable doubt."

[7] The court, over the defendant's objection, limited the defense to the charges of attempt to commit robbery in the first degree and felony murder.

court then reread the charge on the elements of attempt to commit robbery in the first degree, felony murder and conspiracy to commit robbery in the first degree, and on the defense of duress.[8] After the jury returned a verdict of guilty on all three counts, the defendant filed a motion for a new trial, alleging, inter alia, that the court improperly failed to give his entire requested charge on the defense of duress. The court denied the defendant's motion.

"To preserve a challenge to the jury charge, the defendant must make a written request to charge, or take exception to the jury instructions when they are given by the trial court." (Internal quotation marks omitted.) *State* v. *Faria*, 254 Conn. 613, 632, 758 A.2d 348 (2000). Here, the defendant timely filed a written request to charge and also took exception to the instructions at the time they were given. He did not properly preserve his claim, however, because his objections at trial do not provide a basis for his challenge on appeal that the

[8] The court stated in relevant part: "Now, the defense has asserted the defense of duress. The defense having raised a defense of duress, the state must disprove that defense. It only applies to the first and second counts.

"To summarize that defense, there are four requirements to the defense of duress. One, the defendant was coerced to engage in the criminal conduct. Two, the coercion was by the use or threatened imminent use of physical force on him or on a third person. Three, the degree of force or threatened imminent force was such that a person of reasonable firmness in the defendant's situation would have been unable to resist it. And, four, the defendant had no reasonable, legal alternative to violating the law.

"And I want to point out that the statute on duress also adds this: The defense of duress shall not be available to a person who intentionally or recklessly places himself in a situation in which it is probable that he will be subjected to duress. Because the . . . defendant has raised the defense of duress, the state has the burden of disproving the defense beyond a reasonable doubt on counts one and two only.

"If you find that the state has failed to disprove the defense of duress, then you must find the defendant not guilty on those counts. If you find that the defense of duress has been disproved by the state, you should find the defendant guilty on those counts, provided, of course, that you find all of the other elements of the crimes charged have been proven beyond a reasonable doubt."

court improperly failed to inform the jury that evidence of duress could raise reasonable doubt as to the defendant's specific intent to commit the charged offenses. To the extent that his objections at trial were insufficient to preserve this claim, the defendant seeks review under *Golding* and the plain error doctrine.

Under *Golding,* "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding,* supra, 213 Conn. 239–40. "The first two steps in the *Golding* analysis address the reviewability of the claim, while the last two steps involve the merits of the claim." (Internal quotation marks omitted.) *State* v. *Andresen,* 256 Conn. 313, 325, 773 A.2d 328 (2001). "The appellate tribunal is free . . . to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." *State* v. *Golding,* supra, 240. "In the absence of any one of the four *Golding* conditions, the defendant's claim will fail." (Internal quotation marks omitted.) *State* v. *Andresen,* supra, 325.

Here, the record is adequate to review the alleged claim of error, and the claim is of constitutional magnitude. See *State* v. *Amado,* 254 Conn. 184, 194, 756 A.2d 274 (2000) (improper instruction on defense is of constitutional dimension). We are not persuaded, however, that a constitutional violation clearly exists that clearly deprived the defendant of a fair trial.[9]

[9] The defendant claims that the court's failure to instruct the jury properly also violated his rights under article first, §§ 8 and 9, of the constitution of Connecticut. We conclude that this claim is without merit for the same reasons that we reject his federal constitutional claim.

"[I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled. . . . In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Reid*, 254 Conn. 540, 559, 757 A.2d 482 (2000).

We conclude that it is not reasonably possible that the jury was misled. The court specifically instructed that the jury could use "all of the evidence," which included the evidence of duress, to determine whether the state had met its burden of proving the crimes charged beyond a reasonable doubt. Moreover, the defendant's requested instructions that were omitted would not have remedied the claimed defect. The proposed instructions would have permitted a guilty verdict to rest on a finding of duress without any corresponding findings on specific intent for the charged offenses, while the claim on appeal is that the instructions failed to advise that even if the jury rejected the defense of duress, the evidence used to make that finding also could be used to make findings on specific intent.

Furthermore, the proposed instructions were an inaccurate statement of the law.[10] Our Supreme Court stated

---

[10] The defendant's claim that the omitted instructions are consistent with our Supreme Court's holding in *State* v. *Fuller*, 199 Conn. 273, 506 A.2d 556 (1986), which relates the theory of duress to the issue of specific intent, is incorrect. The court in *Fuller* held not that evidence of duress can negate

in *State* v. *Rouleau*, 204 Conn. 240, 248–49, 528 A.2d 343 (1987), that "[t]he rationale of the defense [of duress] is not that the defendant, faced with the unnerving threat of harm unless he does an act which violates the literal language of the criminal law, somehow loses his mental capacity to commit the crime in question . . . [but] rather it is that, even though he had done the act the crime requires, his conduct which violates the literal language of the criminal law is justified because he has thereby avoided a harm of greater magnitude. 1 W. LaFave & A. Scott, Substantive Criminal Law § 5.3a." (Internal quotation marks omitted.) See also *State* v. *Boone*, 15 Conn. App. 34, 40, 544 A.2d 217, cert. denied, 209 Conn. 811, 550 A.2d 1084 (1988). Under *Rouleau*, therefore, because a finding of duress does not negate the element of specific intent for the crime charged, specific intent and duress can coexist. Accordingly, the instructions were not inadequate, and the court properly refused to give the excluded portion of the defendant's requested charge.

The defendant also cannot prevail under the plain error doctrine. Practice Book § 60-5. "[R]eview under the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Additionally, the claimed error must be both clear and harmful enough such that a failure to remedy the error would result in manifest injustice." (Citation omitted; internal quotation marks omitted.) *State* v. *Dwyer*, 59 Conn. App. 207, 216, 757 A.2d 597, cert. denied, 254 Conn. 937, 761 A.2d 763 (2000). The defendant's claim does not meet the "truly extraordinary" standard under

the specific intent element of the charged offense, but that a jury instruction on the state's burden to prove intent beyond a reasonable doubt was not adequate to inform the jury of the state's additional burden to disprove duress. Id., 280–81.

plain error review for all of the same reasons it does not satisfy the third prong of *Golding*.

## B

The defendant also claims that the court's instructions misled the jury because they improperly suggested that he conceded the element of intent for each of the charged crimes. He claims that the excluded instructions would have served to "drive home the message" that by raising the defense of duress he did not admit to the crimes charged, and a rejection of the defense did not relieve the jury of its duty to find all of the elements of felony murder and attempt to commit robbery in the first degree beyond a reasonable doubt. The defendant seeks review of his unpreserved claim under *Golding* and the plain error doctrine.

We conclude that the record is adequate to review the alleged claim of error and that the claim is of constitutional magnitude. See *State* v. *Theriault*, 182 Conn. 366, 378–79, 438 A.2d 432 (1980) (jury instruction that has effect of relieving state of burden of proving essential element of crime charged implicates defendant's right to due process); see also *State* v. *Taylor*, 239 Conn. 481, 512, 687 A.2d 489 (1996) (*Berdon, J.*, dissenting) (jury instruction that dilutes state's burden of proof or places burden on defendant raises constitutional issue), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997). The defendant, however, has failed to prove that a constitutional violation clearly exists that clearly deprived him of a fair trial.

In light of the court's repeated instructions that the state had the burden of proving the defendant guilty beyond a reasonable doubt, we are not persuaded that the jury possibly was misled. The court also explained that the jury had a duty to find that the state had proved every element of each crime charged beyond a reasonable doubt and that, in making that determination, it

could use and draw inferences from any of the evidence admitted at trial. "Unless there is a clear indication to the contrary, a jury is presumed to follow the court's instructions." (Internal quotation marks omitted.) *State* v. *Coughlin*, 61 Conn. App. 90, 96, 762 A.2d 1 (2000), cert. denied, 255 Conn. 934, 767 A.2d 105 (2001). Furthermore, during closing argument, defense counsel discussed the evidence relating to the specific intent element of the charges of attempt to commit robbery in the first degree and felony murder, and claimed that the state had not met its burden of proving the defendant's guilt beyond a reasonable doubt. See *State* v. *Lemoine*, 233 Conn. 502, 515, 659 A.2d 1194 (1995) (fair presentation of case in argument of counsel appropriate consideration in determining fairness of jury charge).

It is also significant that the omitted instructions did not address the defendant's concern that the jury would presume guilt simply because he raised the defense of duress. Those instructions merely conveyed that the jury should find the defendant not guilty if it also found that duress, or the defense of duress, either existed or raised a reasonable doubt regarding his guilt. The alleged error, therefore, could not have been caused by failure to read the proposed instructions. Accordingly, in view of the court's express instructions on finding the specific intent element of each crime charged and defense counsel's own arguments to the jury, we conclude that the jury could not have been led to believe that it was not required to find specific intent for each of the crimes charged beyond a reasonable doubt. The claim also must fail under the plain error doctrine because it does not meet the "truly extraordinary" standard required to make such a finding. See *State* v. *Dwyer*, supra, 59 Conn. App. 216.

## C

The defendant finally claims that the instructions were misleading because the court improperly invited

the jury to regard justification as a separate element of the defense of duress. The defendant asserts that the disputed language is identical to language used by our Supreme Court in *State* v. *Rouleau,* supra, 204 Conn. 240, which was not intended for use in instructing a jury, and, furthermore, that the relevant language in *Rouleau* is an incorrect statement of the law. The defendant thus argues that the instructions were flawed and improperly suggested that the jury could reject the duress defense on a ground not provided by the legislature in General Statutes § 53a-14. The defendant seeks review of his unpreserved claim pursuant to *Golding* or the plain error doctrine.

"[A] fundamental element of due process is the right of a defendant charged with a crime to establish a defense. . . . This fundamental constitutional right includes proper jury instructions on the elements of [the defense] . . . . A defendant who asserts a recognized legal defense, the availability of which is supported by the evidence, is entitled as a matter of law to a theory of defense instruction. . . .

"An improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension. . . . [T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled." (Citation omitted; internal quotation marks omitted.) *State* v. *Amado,* supra, 254 Conn. 193–94.

The record here is adequate to review the alleged claim of error, and the claim is of constitutional magnitude under *Golding.* We are unconvinced, however, that a constitutional violation clearly exists and that the defendant was clearly deprived of a fair trial.

General Statutes § 53a-14 provides in relevant part: "In any prosecution for an offense, it shall be a defense

that the defendant engaged in the proscribed conduct because he was coerced by the use or threatened imminent use of physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist. . . ." The court instructed the jury that "[t]he rationale of the defense of duress is that even though the accused has done the act the crime requires, his conduct, which violates the literal language of the criminal law, is justified because he had thereby avoided a harm of greater magnitude."

We conclude that it is not reasonably possible that the court's instructions misled the jury or misstated the law on the defense of duress. The language regarding "justification" was not presented to the jury as a fifth element to be considered in addition to, and separately from, the other elements of the defense, but was intended as a "rationale," or explanation, as to how the defense worked. Moreover, the disputed language was nearly identical to the language our Supreme Court used in explaining the defense in *State* v. *Rouleau*, supra, 204 Conn. 248–49.[11] Furthermore, the instruction was preceded by a reading of the statute itself and an explanation of the four elements to be considered in finding duress, and was immediately followed by a summary of the four elements, each referred to by number. When the jury interrupted its deliberations to ask that the court reread its instructions on the applicable law, the court again noted that the defense consisted of four elements, enumerated and summarized each of those elements and did not repeat the rationale. At no time did the defendant object to that portion of the instructions.

[11] "The rationale of the defense [of duress] . . . is that, even though he had done the act the crime requires, his conduct which violates the literal language of the criminal law is justified because he has thereby avoided a harm of greater magnitude." (Internal quotation marks omitted.) *State* v. *Rouleau*, supra, 204 Conn. 248–49.

Considering the charge in its entirety and judged by its total effect, as we are required to do, we conclude that the court's instructions on the elements of duress fairly presented the applicable law, and the court's single reference to its underlying rationale did not misstate the law, mislead the jury and thus deprive the defendant of a fair trial.

The defendant's claim that the disputed portion of the jury instructions constitutes plain error also lacks merit because the court did not mislead the jury so as to have caused a manifest injustice to the defendant. The defendant, therefore, is not entitled to plain error review of his claim. See *State* v. *Dwyer*, supra, 59 Conn. App. 216.

## II

The defendant next claims that the court improperly failed to grant his request for a mistrial or his motion for a new trial on the ground that the prosecutor made prejudicial remarks during his closing argument, thus infringing on the defendant's due process right to a fair trial as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut. We disagree.

At the start of his closing argument, the prosecutor told the jury that he noticed throughout the trial that whenever the jury returned from the jury room, it paid "very close, focused attention to the evidence and any laughing . . . which was going on in there was left in there, and, of course, that's because you recognize how serious the subject [is that] we're dealing with here and that you needed to come in, focus on this evidence so that you could come to a just decision about this senseless and cruel death of a young man who, after all, didn't do anything wrong, and you realize that we're not dealing with some abstract photograph, but that [the victim] was a real person, with real friends and

quite a lot of future ahead of him. Having said that, I assure you I'm not going to be engaged here to [appeal] to your sympathy for [the victim] or his family. In fact, what I intend to do, ask you to do, is exactly what the instructions tell you to do, which is to focus in on the evidence, on the cold facts, the hard facts that are presented here in this courtroom and to use your common sense in applying them." Defense counsel did not object.

During his argument, the prosecutor also stated: "Now, unusually, because of some of the cross-examination in this case, you heard people talking about possible sentences, you also heard from the first day any of you were here that sentencing is not your job, and it's not something that you can think about. First of all, it might not be that these witnesses knew correctly what the sentences might be. But, second of all, Judge Hadden is going to do the sentencing. You're going to ignore anything you heard about sentencing or what you may believe about what the possible sentences are to find somebody guilty because that's your job. Your job is to determine whether we've proven this case beyond a reasonable doubt, not to consider what happens next. And, you know, Judge Hadden is a fair person and a fair sentencer, and he'll do the right thing, not to worry." Defense counsel again failed to object.

Defense counsel began her closing argument in relevant part as follows: "[T]his case is not about [the victim]. . . . I questioned each of you when you were in that box before you were selected to ask whether you could put that sympathy aside. . . . As much as we are all humanly able to do so, whatever emotional feelings you feel about the brutality of this killing are not proper to consider in terms of the evidence in this case, and [the prosecutor's] comments like he was a nice friend, had a nice future ahead of him, that's not evidence in this case. There is no evidence about that in

this case. Sympathy is not a proper part of the deliberation process. [The court] will reiterate that, and I just wanted at the outset to make clear, that's not a part of your job."

In another part of her closing argument, defense counsel seemed to concede that the state's case as to the conspiracy charge was stronger than its case as to the other two charges. She thus informed the jury that "I'm going to spend the rest of my time on focusing on why the state has failed to meet its burden of proof with regard to these two charges." She concluded by arguing that "you'll find that the evidence is not there to support a finding of guilty on those first two counts . . . ."

In his rebuttal argument, the prosecutor referred to defense counsel's argument: "[Defense counsel] says to you, essentially, ['convict] my client of conspiracy to commit robbery in the first [degree.'] Well, why does she say that? Because the [duress] defense doesn't apply to that, that's one reason. There's absolutely no reason that a reasonable jury could possibly acquit her client of that crime. And I'll tell you what, the dancing in the streets that [defense counsel] and her client will do if that's what you do in this case will make Gregory Hines[12] look like me." When defense counsel objected to those remarks, the court cautioned the jury: "I think the reference to what the defendant or his attorney will do depending on the verdict is inappropriate. The jury will disregard it."

The prosecutor concluded his rebuttal argument with the following words: "[J]ustice lies with you. You, the jury, are the people who decide what justice is and where it lies in this case and, given the overwhelming

---

[12] Gregory Hines is a well known entertainer and dancer who has appeared on television and in numerous nightclub acts, Broadway musicals and Hollywood films.

evidence that [the defendant] is guilty of all three of these crimes, given the oath you took to follow the law, to fairly and evenly and with justice find the facts, justice requires you to bring back guilty verdicts. That's the only justice [the victim] gets in this world any longer. That's your job, and I know you can do it." Defense counsel did not immediately object.

After the jury was excused, defense counsel characterized the prosecutor's remarks about the victim being a "real person" who had "real friends and quite a lot of future ahead of him" as inappropriate, unsupported by the evidence and intended to arouse sympathy, and requested that those remarks be stricken from the record and that the jurors be advised to disregard them.

Defense counsel also objected to the prosecutor's remark that "Judge Hadden is a fair person and a fair sentencer, and he'll do the right thing, not to worry" on the ground that there was no evidence before the jury that the court was a "fair sentencer" and that the remark constituted an improper attempt to assure the jury not to worry about convicting the defendant because the judge would impose a fair sentence. She insisted that such a consideration was totally irrelevant, should not influence the jury's deliberations and that the court should give an instruction to that effect. The court responded that the defense had brought out testimony regarding the sentence for felony murder[13] and asked if counsel wanted the court to advise the jury that there was no evidence that the judge was a fair

---

[13] On cross-examination of Rodriguez, defense counsel asked him if he understood that when his case was transferred out of Superior Court, Juvenile Matters, to adult court, he was facing a maximum of sixty years and a mandatory minimum of twenty-five years imprisonment on the felony murder charge. During the cross-examination of Strong, defense counsel similarly asked if his attorney had told him that the felony murder charge carried a maximum sentence of sixty years imprisonment and a mandatory minimum of twenty-five years imprisonment.

person. Counsel responded by requesting an instruction that the imposition of a sentence should have no bearing on the deliberations.

Counsel for the defendant finally objected to the prosecutor's remarks during rebuttal argument that urged the jury to convict the defendant on all three counts because that is what "justice requires" to do its "job." She argued that the remarks were intended to intimidate and pressure the jury to convict on grounds not supported by the evidence. She argued that it is not the duty of a jury to determine where "justice lies," as the prosecutor suggested. Counsel then sought a mistrial. The court denied that request, finding that the disputed remarks were not "so inappropriate that they call for the court to make any reference to them in the course of the charge. Most of the things covered that [the prosecutor] mentioned that you find offensive . . . will be covered in the course of the charge to the jury."

In its instructions, the court advised the jury: "You may not go outside the evidence introduced into court to find the facts. This means that you may not resort to guesswork or conjecture or speculation, and you must not be influenced by any personal likes, opinions, prejudices or sympathy. Opinions of either counsel as stated to you in their arguments are in no way binding on you in your determination of the facts . . . ."

The court later instructed the jury to "[k]eep in mind that [the] defendant . . . justly relies on you to carefully consider the claims made in his behalf by his counsel . . . and to consider all the evidence and to find him not guilty if the law and the facts require such verdicts. . . . Leave sympathy and sentiment, prejudice and bias behind you when you enter the jury room for your deliberations. Guard against these factors as you would guard against any other improper consideration which may divert you from a careful, dispassion-

ate investigation of the evidence before you. Let your verdicts, whatever they may be, reflect your sound, sober, honest judgment unwarped by any consideration which your oath as jurors will not justify and approve."

On the issue of punishment, the court charged: "It is proper for me to say to you also that you are not to be concerned with any punishment to be imposed in the event of a conviction; that is a matter exclusively within the province of the court and under the laws of the state of Connecticut. You are to find the fact of guilt or innocence uninfluenced by the probable punishment which would follow a conviction in the event that there is a conviction."

After the jury found the defendant guilty on all three charges, the defendant filed a motion for a new trial, in part on the ground that the court improperly had denied his request for a mistrial. Claiming that the prosecutor's remarks in closing argument were unfairly prejudicial, he specifically identified as inappropriate the prosecutor's reference to the victim as a person with "real friends" whose future was "cut short," to his express and implied references to sentencing, to his comments that it would be a "cop out" and that the jurors would not be "doing their job" if they convicted the defendant only on the conspiracy charge, and to his comments regarding the role of the jury in deciding what "justice" is and where it lies. The court, seeing no reason to change its previous rulings, denied the motion for a new trial. On appeal, the defendant asserts that the state's remark that he and his counsel would be "dancing in the streets" if the jury convicted him only on the conspiracy count also is part of his claim because the remark was too egregious to disregard, despite the court's instruction to do so.

We begin our analysis with a discussion of the appropriate standard of review. "The decision as to whether

to grant a motion for a mistrial . . . is one that requires the trial court to exercise its judicial discretion. . . . Our review of the trial court's exercise of its discretion is limited to questions of whether the court correctly applied the law and could reasonably have concluded as it did. . . . Every reasonable presumption will be given in favor of the trial court's ruling. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion. . . .

"While the remedy of a mistrial is permitted under the rules of practice, it is not favored. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . The general rule in Connecticut is that a mistrial is granted only where it is apparent to the court that as a result of some occurrence during trial a party has been denied the opportunity for a fair trial. . . . The trial court enjoys wide discretion in deciding whether a mistrial is warranted . . . and its evaluation as to events occurring before the jury is to be accorded the highest deference. . . . Every reasonable presumption will be given in favor of the trial court's ruling . . . because the trial court, which has a firsthand impression of the jury, is in the best position to evaluate the critical question of whether the juror's or jurors' exposure has prejudiced a defendant. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion. . . . A reviewing court gives great weight to curative instructions in assessing error." (Citations omitted; internal quotation marks omitted.) *State* v. *Relliford*, 63 Conn. App. 442, 447–48, 775 A.2d 351 (2001).

"Prosecutorial misconduct may . . . occur in the course of closing argument. . . . Such argument may be, in light of all of the facts and circumstances, so

egregious that no curative instruction could reasonably be expected to remove [its] prejudicial impact. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . .

"[T]o determine whether claims of prosecutorial misconduct amounted to a denial of due process, we must decide whether the challenged remarks were improper, and, if so, whether they caused substantial prejudice to the defendant. . . . To make this determination, we must focus on several factors: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the conduct; (3) the frequency of the conduct; (4) the centrality of the misconduct to the critical issues of the case; (5) the strength of the curative instructions adopted; and (6) the strength of the state's case. . . .

"When a verdict is challenged on the basis of the prosecutor's allegedly prejudicial remarks, the defendant bears the burden of proving the remarks prejudicial in light of the whole trial. . . . The trial court's ruling is entitled to weight because of the vantage point from which it can observe and evaluate the circumstances of the trial. The trial court is in a better position to determine the propriety of the remarks of counsel and whether or not they are harmful. . . . The general principle is that a mistrial should be granted only as a result of some occurrence on the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial. . . . [T]he trial judge is the arbiter of the many circumstances which may arise during a trial . . . [and] [t]he trial court has a wide discretion in passing on motions for mistrial." (Citations omitted; internal quotation marks omitted.) *State* v.

*Rivera,* 61 Conn. App. 763, 769–70, 765 A.2d 1240, cert. denied, 256 Conn. 901, 772 A.2d 599 (2001).

In determining whether the prosecutor's closing argument was improper, we turn first to his remark that the victim was a "real person, with real friends and quite a lot of future ahead of him." Viewing the remark in context, it is clear that the prosecutor simply was attempting to remind the jurors of the serious work before them and that the victim was not an abstraction, but a real person with a future, a conclusion obviously supported by the evidence. Nevertheless, to the extent that the comment may have aroused the jurors' sympathy, we will consider the six factors identified in *Rivera* to determine whether the alleged misconduct was so egregious as to substantially prejudice the defendant. See id., 770.

Although the remark was not invited by the conduct or argument of the defense, it was not extreme, not repeated and not related to the most critical issue in the case, which was the defendant's motivation. Moreover, the prosecutor, defense counsel and the court reminded the jurors at least four times not to be swayed by subjective factors in reaching their decision. The prosecutor advised the jurors to focus on the evidence immediately before and after he made the remark. At the same time, he stated that he had no intention of appealing to their sympathies and urged them to look at the "cold facts, the hard facts." Defense counsel likewise advised the jury at the start of her closing argument to put sympathy aside and consider only the evidence. In addition, the court twice instructed the jury not to be influenced by sympathy, prejudice and bias, but to be guided by a "careful, dispassionate investigation" of the evidence. Finally, on the basis of the defendant's admission that he participated in the crime and the testimony against him by two of the other participants, the state's case was extremely strong. We there-

fore agree with the court that the prosecutor's comment was not harmful and that, even if it was, the court's repeated instructions not to be swayed by sympathy, personal opinions or bias and the comments by both parties' counsel to a similar effect were more than sufficient to cure any potential prejudice that might have resulted.

We turn next to the prosecutor's remarks regarding the judge as "a fair person and a fair sentencer" who would "do the right thing, not to worry." Although such remarks might be subject to differing interpretations, "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." (Internal quotation marks omitted.) *State* v. *Hicks*, 56 Conn. App. 384, 393, 743 A.2d 640 (2000). In the present case, the purpose of the prosecutor's remarks was to distinguish between the jury's "job" of finding guilt and the court's "job" of determining the sentence, and his admonition "not to worry" was intended to reassure the jury that it should not be concerned with a phase of the trial that was not within the scope of its duty. Accordingly, we are not convinced that the prosecutor's remarks were improper.

Even if the prosecutor's remarks were improper, however, they did not deny the defendant his due process right to a fair trial. Significantly, the defense itself invited the remarks when it called to the jury's attention the sentence for the felony murder charge while cross-examining two of the other participants in the crime. See *State* v. *Holmes*, 64 Conn. App. 80, 90, 778 A.2d 253, cert. denied, 258 Conn. 911, 782 A.2d 1249 (2001). The purpose of the prosecutor's remarks, therefore, was to alleviate possible confusion regarding the jurors' role. In addition, the remarks were relatively mild, were

not repeated and were not related to the issue of the defendant's mental state at the time of the crime. Finally, the remarks were similar to the court's curative and entirely proper instruction that a finding of "guilt or innocence [should not be influenced] by the probable punishment which would follow a conviction . . . ." On the basis of those factors and the state's strong case against the defendant, we conclude that the prosecutor's remarks did not deny the defendant his right to a fair trial.

We also conclude that the prosecutor's comment that "[t]here's absolutely no reason that a reasonable jury could possibly acquit [the defendant] of [the conspiracy charge]," followed by the comment that "the dancing in the streets that [defense counsel] and her client will do if that's what you do in this case will make Gregory Hines look like me," although improper, did not cause harm or result in substantial prejudice to the defendant. Immediately following those remarks, defense counsel objected, and the court advised the jury that a "reference to what the defendant or his attorney will do depending on the verdict is inappropriate. The jury will disregard it." We often have held that "a prompt cautionary instruction to the jury regarding improper prosecutorial remarks obviates any possible harm to the defendant." (Internal quotation marks omitted.) *State* v. *Adams*, 52 Conn. App. 643, 655, 727 A.2d 780 (1999), aff'd, 252 Conn. 752, 748 A.2d 872, cert. denied, 531 U.S. 876, 121 S. Ct. 182, 148 L. Ed. 2d 126 (2000). "Unless there is evidence to the contrary, the jury is presumed to follow the court's instructions." (Internal quotation marks omitted.) *State* v. *Ancona*, 256 Conn. 214, 219, 772 A.2d 571 (2001). In addition, the comment was not repeated and did not relate to the defendant's motivation. Finally, the state's case against the defendant was very strong, and the comment was not so egregious that it could not be remedied by the court's curative instruction. But see *State* v. *Mills*, 57 Conn. App. 202,

210–13, 748 A.2d 318 (due process violation where prosecutor repeatedly told jury it must convict defendant so evil would not triumph by its inaction and victim would not be victimized twice), cert. denied, 253 Conn. 914, 915, 754 A.2d 163 (2000); *State* v. *Butler*, 55 Conn. App. 502, 519, 739 A.2d 732 (1999) (due process violation where prosecutor referred to inadmissible evidence during closing argument), aff'd, 255 Conn. 828, 769 A.2d 697 (2001). We thus conclude that the prosecutor's improper remarks were not unduly prejudicial to the defendant.

We finally address the prosecutor's remarks that "[j]ustice requires you to bring back guilty verdicts. That's the only justice [the victim] gets in this world any longer. That's your job, and I know you can do it." Considered in context, those remarks were not unfairly prejudicial, as they followed the prosecutor's plea that the jurors examine the "overwhelming evidence" at trial and, in keeping with the oath they took to follow the law, "to fairly and evenly and with justice find the facts."

Nonetheless, even if deemed improper, the remarks could not have resulted in substantial prejudice to the defendant. We must always be mindful that "[i]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of the argument." (Internal quotation marks omitted.) *State* v. *Alamo*, 57 Conn. App. 233, 235, 748 A.2d 316, cert. denied, 253 Conn. 912, 754 A.2d 161 (2000). Here, the remarks were not extreme, were never repeated and did not relate directly to the defendant's mental state. Furthermore, the court reminded the jury several times not to base its decision on feelings of sympathy or prejudice. See *State* v. *James*, 54 Conn. App. 26, 47–49, 734 A.2d 1012 (prosecutor's remarks that victim not in court because

defendant made sure of that, victim did not deserve to die at hands of defendant and had no opportunity to reach defendant's age did not substantially prejudice jury in light of court's instructions that jury must decide case based on evidence admitted at trial, not sympathy), cert. denied, 251 Conn. 903, 738 A.2d 1092 (1999). Finally, there was strong evidence of the defendant's guilt, including his statement to the police, and the statements of Rodriguez and Strong implicating him in the crimes; therefore, the jury did not need to rely on the prosecutor's remarks to find the defendant guilty.

We now address whether the cumulative impact of the prosecutor's remarks may have prejudiced the jury and denied the defendant the right to a fair trial. In concluding that those remarks did not deny the defendant the right to a fair trial, we first observe that the court deemed improper only the remark regarding "dancing in the streets." It immediately issued a curative instruction, however, to mitigate any possible harmful effect. The remaining comments were relatively mild, isolated and brief, and were not part of any discernible pattern or practice of misconduct. Moreover, none was directly related to the issue of the defendant's mental state at the time of the crime, the court in all instances gave adequate curative instructions and, in light of the defendant's admission that he participated in the crime and the testimony of the other participants, the case against him was strong. Accordingly, we conclude that the cumulative impact of the remarks cannot be said to have affected the outcome of the trial or to have denied the defendant his due process right to a fair trial. The court, therefore, did not abuse its discretion in denying the defendant's request for a mistrial on the ground of prosecutorial misconduct. For all of the same reasons, the court properly denied the defendant's motion for a new trial. See *State* v. *Jeudis*, 62 Conn. App. 787, 793–94, 772 A.2d 715 (trial court properly

denied motion for new trial because record did not support claim that defendant was deprived of fair trial due to prosecutorial misconduct), cert. denied, 256 Conn. 923, 774 A.2d 140 (2001).

The judgment is affirmed.

In this opinion the other judges concurred.