STATE OF CONNECTICUT *v.* MACKINTOSH DUTEAU
(AC 20047)

Mihalakos, Dranginis and Healey, Js.

Argued October 30, 2001—officially released February 19, 2002

---

*Reine C. Boyer*, for the appellant (defendant).

*Stephen M. Carney*, assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, state's attorney, and *Paul E. Murray*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, MacKintosh Duteau, appeals from the judgment of conviction, rendered after a jury trial, of sale of narcotics in violation of General Statutes § 21a-278 (b)[1] and possession of narcotics in violation of General Statutes § 21a-279 (a).[2] On appeal, the defendant claims that (1) the trial court improperly denied his motion to suppress a photograph taken of him by police officers, (2) he was subject to an illegal search and seizure in violation of his rights as set forth

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who . . . sells . . . offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years . . . ."

[2] General Statutes § 21a-279 (a) provides in relevant part: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned . . . ."

in article first, §§ 7 and 9, of the constitution of Connecticut, (3) the police identification procedure was unduly suggestive and unreliable in violation of his constitutional rights, (4) the state engaged in prosecutorial misconduct in its questioning of the defendant during cross-examination and in its comments during closing argument, thereby depriving him of a fair trial and his constitutional right to effective assistance of counsel, (5) the trial court unduly restricted his right to cross-examine a witness, (6) the trial court's conduct during the trial in the form of gestures and innuendos was egregious, thereby depriving him of a fair trial, and (7) the trial court improperly precluded him from eliciting character evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On May 22, 1998, an undercover Norwich police officer, Gregory Post, purchased crack cocaine from an unknown male, whom he had never before encountered, on Lake Street in Norwich. Post provided a description of the individual who sold him the narcotics to Officers Mark Rankowitz and Christopher Ladd. After returning to the police station, Post examined a book compiled by the Norwich police department that contained approximately 200 photographs of persons in the area suspected to be involved with narcotics. Post did not recognize any of the photographs as being of the person who sold him cocaine.

On June 16, 1998, while walking in the vicinity of Lake Street, Officers Rankowitz and Michael Blanchette noticed a male matching Post's description. The officers approached the male, who identified himself as the defendant. The officers took a photograph of the defendant and placed the picture in the police book. That same day, Post again reviewed the book and, upon seeing the photograph, identified the defendant as the person who sold cocaine to him on May 22, 1998.

Thereafter, the defendant was arrested and charged with the sale and possession of narcotics in violation of §§ 21a-278 (b) and 21a-279 (a). A jury trial ensued, and the defendant was convicted of both counts. This appeal followed. Additional facts will be set forth where relevant to the claim raised.

## I

The defendant first claims that the court improperly denied his motion to suppress the photograph of him that was taken by the police because the photograph was a result of an illegal search and seizure in violation of his *Terry* rights.[3] We decline to review this claim.

The following facts are pertinent to our disposition of this claim. The defendant filed two motions to suppress the photograph and the photographic identification by Post, one on April 28, 1999, and another on May 4, 1999. The defendant filed the April 28, 1999 motion on the ground that "the photographic identification of the defendant made by [Post] was derived from unnecessarily suggestive procedures in violation of defendant's State and Federal Constitutional rights and is therefore unreliable." After a two day hearing regarding that motion, which was held on April 29 and 30, 1999, the trial court denied the motion. In his April 28 motion to suppress, the defendant did not raise the issues of a *Terry* violation and whether he was subject to an illegal stop and seizure.

The only mention of *Terry* and the principles involving an illegal stop arose at the very end of the suppression hearing, when the state objected to the relevancy of one of the defendant's questions on cross-examination of Officer Blanchette. The trial court sustained the state's objection and stated that the *Terry* issue was not relevant to, and not part of, the defendant's suppression

[3] See *Terry* v. *Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

motion. The defendant did not take an exception to that ruling.

The defendant then filed another motion to suppress the photograph on May 4, 1999, in which he claimed that the photograph was procured as a result of an illegal stop and seizure. Although the court apparently denied this second motion, the defendant has failed to provide a copy of the transcript indicating the trial court's ruling. Moreover, after filing the present appeal, the defendant filed a notice pursuant to Practice Book § 64-1[4] that the trial court had failed to provide either a memorandum of decision or a signed transcript of its denial of the May 4, 1999 motion to suppress.

In its response pursuant to Practice Book § 64-1, the court did not address the *Terry* issue and whether the picture taken of the defendant occurred as a result of an illegal search and seizure. Rather, the court stated: "Without going into the substantive issues raised therein, there were procedural reasons for denying [the May 4, 1999 motion to suppress]. For instance, it was untimely. . . . Nor, should a defendant be allowed seriatim motions on the same, or substantially similar, issue(s). . . . In any event, the state did not introduce any photograph(s) of the defendant into evidence at trial. . . . At trial, [Post] . . . testified that on June 16,

---

[4] Practice Book § 64-1 provides in relevant part: "(a) The court shall state its decision either orally or in writing . . . (4) in ruling on motions to suppress . . . . The court's decision shall encompass its conclusion as to each claim of law raised by the parties and the factual basis therefor. If oral, the decision shall be recorded by a court reporter and, if there is an appeal, the trial court shall create a memorandum of decision for use in the appeal by ordering a transcript of the portion of the proceedings in which it stated its oral decision. The transcript of the decision shall be signed by the trial judge and filed in the trial court clerk's office. . . .

"(b) If the trial judge fails to file a memorandum of decision or sign a transcript of the oral decision in any case covered by paragraph (a), the appellant may file with the appellate clerk a notice that the decision has not been filed in compliance with paragraph (a). . . . The trial court shall thereafter comply with paragraph (a)."

1998, he again looked through the book of photographs and recognized a photograph of the defendant . . . . While this testimony was being elicited, the defendant made no objection(s). . . . Officer Post then identified the defendant in court as the person from whom he had made the [drug] purchase. There was no objection by the defendant. . . . [W]hen the defendant cross-examined Post, the defendant asked Post how the book of photographs had been used. . . . The defendant introduced the book of photographs [into evidence]. . . . It contained the June 16 photograph of the defendant. The defendant introduced this specific photograph also as a separate exhibit. . . . At trial, the defendant did not file any requests to charge touching upon [whether] the court should instruct the jury on any identification issue."

The trial court concluded by "respectfully request[ing] that it be excused from complying with [Practice Book] § 64-[1] (a) . . . ." The defendant did not file a motion for articulation pursuant to Practice Book § 66-5 or a motion to compel the trial court to file a memorandum of decision pursuant to Practice Book § 60-2 (1).

It is well established that it "is the responsibility of the appellant to provide an adequate record for review." Practice Book § 61-10. "While we do not condone the court's failure to comply with [Practice Book] § 4059 [now § 64-1 (a)] . . . we would not exalt form over substance if the deficiency were of a technical nature." (Internal quotation marks omitted.) *State* v. *Beliveau*, 52 Conn. App. 475, 480, 727 A.2d 737, cert. denied, 249 Conn. 920, 733 A.2d 235 (1999). Here, the inadequate record is of a fatal and not technical nature and, thus, prevents our review of the merits of this claim. See *State* v. *Rosedom*, 34 Conn. App. 141, 143, 640 A.2d 634 (1994).

In this case, the record is devoid of the court's decision and explanation regarding the motion to suppress the photograph and the *Terry* claim. Although the court, in response to the Practice Book § 64-1 notice, stated that the defendant's motion to suppress was procedurally flawed, it did not affirmatively state that it denied the motion because of those defects, nor did it provide its basis for denying the motion. Moreover, the record does not reveal any specific findings by the trial court with regard to the defendant's *Terry* claim. We additionally note that the defendant failed to file the transcript of the hearing on the May 4, 1999 motion to suppress.

The defendant could have ensured the adequacy of the record by filing a motion for articulation pursuant to Practice Book § 66-5 or by filing a motion to compel the trial court to file a memorandum of decision pursuant to Practice Book § 60-2. *State* v. *Rosedom,* supra, 34 Conn. App. 144–45. The defendant, however, declined to pursue either route. "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claims] would be entirely speculative." (Internal quotation marks omitted.) *State* v. *Talton,* 63 Conn. App. 851, 861, 779 A.2d 166, cert. denied, 258 Conn. 907, 782 A.2d 1250 (2001). In light of the inadequate record before us, we decline to review the defendant's claim.[5]

---

[5] The defendant also separately contends that the actions of the police officers in this case constituted an illegal search and seizure in violation of his state constitutional rights. The defendant failed to raise this issue before the trial court, and he does not seek review of this claim pursuant to *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. This "court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ." Practice Book § 60-5. Moreover, to the extent that the defendant implicated this issue in his May 4, 1999 motion to suppress, as stated previously, the record is inadequate to review such a claim. Accordingly, we decline to review this claim.

## II

The defendant next claims that the court improperly denied his motion to suppress the photograph taken of him because Post's identification resulted from unnecessarily suggestive procedures in violation of the defendant's constitutional rights. The defendant argues that because Post's identification arose from unnecessarily suggestive procedures, Post's subsequent in-court identification of the defendant was unreliable and, therefore, impermissible. We decline to review this claim.

In essence, the first part of this claim arises from the trial court's denial of the defendant's April 28, 1999 motion to suppress. The defendant based his April 28, 1999 motion to suppress on the ground that Post's identification was derived from unnecessarily suggestive procedures. Although the court denied the defendant's motion, the defendant has failed to provide this court with a signed transcript or a memorandum of decision reflecting the court's decision. In its response pursuant to Practice Book § 64-1, the court did not address the April 28, 1999 motion to suppress other than to state that the "defendant does not seek the court's decision on this April 28, 1999 motion." Furthermore, a thorough review of the transcripts does not reveal the basis of the trial court's denial.

As set forth in part I of this opinion, this court will not review claims where there is an inadequate record. Accordingly, to the extent that the defendant challenges the denial of his April 28, 1999 motion to suppress the photograph and Post's identification, because of the absence of a memorandum of decision or signed transcript here, we decline to review this claim.

The defendant additionally asserts that Post's in-court identification was unreliable and, thus, improperly before the jury. We note at the outset that the state did not introduce into evidence the photograph of the

defendant or the photographic book. Moreover, during the trial, the defendant did not challenge or object to any reference to the photograph. Specifically, the defendant did not object when Post testified that he recognized a photograph of the defendant in the book or when Post identified him in court.

This "court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ." Practice Book § 60-5. "Appellate review of evidentiary rulings is ordinarily limited to the specific legal issue raised by the objection of trial counsel. . . . By failing to object . . . the defendant failed to preserve this claim." (Citations omitted; internal quotation marks omitted.) *State* v. *Moore*, 65 Conn. App. 717, 721–22, 783 A.2d 1100, cert. denied, 258 Conn. 940, 786 A.2d 427 (2001). Because the defendant failed to object to Post's identification and testimony and, further, neglected to raise this issue before the trial court, this claim is unpreserved.[6] Accordingly, we will not review this unpreserved claim.

### III

The defendant next contends that the state engaged in prosecutorial misconduct and thereby deprived him of a fair trial and his sixth amendment right to effective assistance of counsel. Specifically, the defendant argues that the prosecutor's comments during his cross-examination[7] and closing

---

[6] Moreover, the defendant does not seek our review of this claim pursuant to either *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. Practice Book § 60-5.

[7] The defendant now challenges questions that the prosecutor posed during the state's cross-examination of the defendant that related to the defendant's knowledge of the Norwich area and to whether the translator, who was assigned to interpret the proceedings for the defendant, accurately relayed his answers. The defendant claims that the following questions and statements constituted prosecutorial misconduct:

"[Assistant State's Attorney]: Did you, sir, say these are the only two places that I know in Norwich, Chestnut Street and Division Street?

"[Defendant]: Because that's where—because I was there. That's where

I was the day that I was accused of selling drugs.

"[Assistant State's Attorney]: This is a yes or no, sir. Did you say the only two places that I know in Norwich are Division Street and Chestnut Street?

"[Defendant]: I—

"[Assistant State's Attorney]: Objection—

"The Court: Hold on.

"[Assistant State's Attorney]: —I asked a yes or no question, that's why I objected.

"The Court: Well, maybe it's a long way of saying yes or no.

"[Assistant State's Attorney]: Those are the only two words that I know in Creole now, I think.

"The Court: I don't know what he said. Go ahead madam interpreter.

"[Defendant]: I did not think that those were the two places that I know in Norwich. I said those are the two places I share my time between those two places.

"[Assistant State's Attorney]: You speak some English, sir?

"[Defendant]: Yes.

"[Assistant State's Attorney]: Do you know where it was a poor translation then, sir, when the translator said I don't know any other place in Norwich?

"[Defense Counsel]: Objection, Your Honor, counsel is asking the witness to provide some type of expert testimony regarding the interpreter's ability to translate accurately, Your Honor.

"The Court: I think it's a fair question on cross. Madam interpreter, ask [the defendant] if he understands the question [the assistant state's attorney] just asked.

"[Defendant]: What question?

"The Court: Try it again  . . .  but clean it up a bit, though.

"[Assistant State's Attorney]: The translator in English said that you  . . . said I don't know any other place in Norwich. Is that an accurate translation of what you said, not what you meant?

* * *

"[Assistant State's Attorney]: You are saying, sir, you don't understand English?

"[Defendant]: I do understand some English, but not everything that he said to me in English.

"[Assistant State's Attorney]: You understand a substantial amount?

"[Defendant]: Yes.

"[Assistant State's Attorney]: In fact, before you . . . got used to working with the interpreter you were answering some questions before that translation was made?

"[Defendant]: It's easier for me to talk through an interpreter because I don't want anything—I don't want my not being able to understand some English words [to] affect my ability to make myself understood.

"[Assistant State's Attorney]: But, you answered some questions even before the interpretation was made?

"[Defendant]: The simple questions.

"[Assistant State's Attorney]: Like your constitutional rights?

argument[8] were improper. Because the defendant did not properly preserve this claim, he now seeks our review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[9]

It is well settled that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id. This

---

"[Defendant]: What do you mean by constitutional rights?

"[Assistant State's Attorney]: These are the kinds of questions that you are calling simply, questions about your constitutional rights, is that correct sir?

"[Defense Counsel]: Objection, Your Honor, I don't think the defendant ever characterized the constitutional questions as simple. I think that it is definitely a mischaracterization of the defendant's testimony.

"[Assistant State's Attorney]: Your Honor, I was prepared to get the transcripts.

"The Court: Go ahead, the jury will remember or they won't remember it. We will find out. Go ahead, it's up to the jury.

"[Assistant State's Attorney]: My questions—

"The Court: Go ahead, you can ask the question."

[8] The defendant challenges the following comments that the assistant state's attorney made during closing argument: "And I would suggest to you that this defendant has tried to use his background, the fact that he is— that English is not his first language is a bit of a barrier between you and him. And a bit of a barrier between him and the police to suggest that somehow he's not a seller of drugs. He's innocent and he's misunderstood.

\* \* \*

"He says that his whole life in the United States has been in bad neighborhoods. Neighborhoods by his testimony he says that are no good, they are high crime, they are dangerous. And then he says after being shown this and not being told specifically by counsel what it is, no, I've never seen cocaine before in my life."

[9] This claim is unpreserved because the defendant failed to object to the state's questions during cross-examination on the ground of prosecutorial misconduct and, moreover, failed to raise any objection, or to take exception, to the statements during closing argument.

court may dispose of a claim on the ground that a defendant has failed to meet any one of the *Golding* criteria. *State* v. *Heredia*, 253 Conn. 543, 560, 754 A.2d 114 (2000). As the defendant cannot satisfy the third prong of *Golding*, the defendant's claim must fail.

"We will not afford *Golding* review to [unpreserved] claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial. . . . In determining whether a prosecutor's conduct was so egregious as to deny a defendant a fair trial, we note that some leeway must be afforded to the advocates . . . . [W]e must review the comments complained of in the context of the entire trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Cansler*, 54 Conn. App. 819, 827–28, 738 A.2d 1095 (1999).

Furthermore, "[i]n considering the defendant's claim of prosecutorial misconduct, we ask whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Internal quotation marks omitted.) *State* v. *Banks*, 58 Conn. App. 603, 619, 755 A.2d 279, cert. denied, 254 Conn. 923, 761 A.2d 755 (2000).

After thoroughly reviewing the transcripts and record, we conclude that the prosecutor's questions of the defendant on cross-examination and his comments during closing argument did not so infect the trial with unfairness as to deny the defendant his right to a fair trial. See *State* v. *Dwyer*, 59 Conn. App. 207, 212, 757

A.2d 597, cert. denied, 254 Conn. 937, 761 A.2d 763 (2000). Even if we assume arguendo that the prosecutor's statements were improper, when considered in the context of the entire trial, the statements were isolated and brief and did not constitute a pattern of conduct repeated throughout the trial or conduct that was blatantly egregious, nor did they violate the defendant's constitutional right to due process. See *State* v. *Banks*, supra, 58 Conn. App. 621. Accordingly, the defendant's claim fails to meet the third prong of *Golding*. See *State* v. *Dwyer*, supra, 212.

## IV

The defendant next claims that the trial court improperly restricted his examination of an adverse witness whom he called to testify.[10] We decline to review this claim.[11]

We first note, as set forth in part II of this opinion, that this court will not review a claim "unless it was distinctly raised at the trial . . . ." Practice Book § 60-5. "We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim. . . . Claims that were not distinctly raised at trial are not reviewable on appeal." (Internal quotation marks omitted.) *Matto* v. *Dermatopathology Associates of New York*, 55 Conn. App. 592, 596, 739 A.2d 1284 (1999). A thorough review of the record, transcripts and briefs reveals that the defendant failed to object or to raise this issue before the trial court.

---

[10] The defendant's claim arises out of his direct examination of his witness, Lieutenant Robert Aldi, who he called to testify about police procedures to safeguard evidence and photographic identifications.

[11] The defendant does not seek our review of this unpreserved claim pursuant to either *Golding* or the plain error doctrine.

Moreover, the defendant has failed to present this claim properly for appellate review as required by Practice Book § 67-4 (d) (3).[12] "It has long been our strong policy that if evidentiary rulings claimed to be improper are to be reviewed by this court, they must be set forth in the briefs as required and outlined by the rules of practice. . . . A party's mere assertion in [its] brief that the evidence was improperly excluded, coupled with transcript page references, will not be sufficient . . . ." (Citation omitted; internal quotation marks omitted.) *Matto* v. *Dermatopathology Associates of New York*, supra, 55 Conn. App. 596–97.

In raising this claim, the defendant merely states that the trial court improperly precluded him from eliciting testimony from Aldi and has failed to provide any specific reference to the transcripts. Accordingly, because the defendant has not properly preserved or presented this issue for appellate review, we decline to review this claim of error.

V

The defendant next claims that as a result of the trial court's egregious conduct in the form of gestures, comments and innuendos made during trial, he was deprived of his right to have a fair trial. We decline to review this claim.

The defendant fails to provide either legal authority or analysis to support this claim. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We will not review claims

---

[12] Practice Book § 67-4 (d) (3) provides: "When error is claimed in any evidentiary ruling in a court or jury case, the brief or appendix shall include a verbatim statement of the following: the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; and the ruling."

absent law and analysis." (Citation omitted; internal quotation marks omitted.) *State* v. *Jones*, 67 Conn. App. 25, 27 n.2, 787 A.2d 43 (2001).

VI

The defendant finally claims that the court improperly precluded him from introducing character evidence with respect to personality traits of narcotics sellers. We decline to review this claim.

The defendant has failed to present this claim properly for appellate review as mandated by Practice Book § 67-4 (d) (3). As previously stated, "[a] party's mere assertion in [its] brief that the evidence was improperly excluded, coupled with transcript page references, will not be sufficient . . . ." (Internal quotation marks omitted.) *Matto* v. *Dermatopathology Associates of New York*, supra, 55 Conn. App. 597. The defendant has not properly presented this claim for appeal, and we therefore decline to review it.

The judgment is affirmed.

In this opinion the other judges concurred.