STATE OF CONNECTICUT *v.* ANDRE JOHNSON
(AC 21304)

Lavery, C. J., and Mihalakos and Daly, Js.

Argued February 21—officially released July 30, 2002

*Robert E. Byron,* special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Gary W. Nicholson,* senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Andre Johnson, appeals from the judgment of conviction, rendered after a jury trial, of reckless manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-55a[1] and 53a-55 (a) (3).[2] On appeal, the defendant claims that (1) the trial court improperly violated his constitutional protection against double jeopardy by exercising the sentence enhancement provided for under General Statutes § 53-202k,[3] (2) the evidence was insufficient to

---

[1] General Statutes § 53a-55a provides in relevant part: "(a) A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses . . . a pistol, revolver . . . or other firearm. . . .

"(b) Manslaughter in the first degree with a firearm is a class B felony and any person found guilty under this section shall be sentenced to a term of imprisonment in accordance with subdivision (4) of section 53a-35a of which five years of the sentence imposed may not be suspended or reduced by the court."

[2] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[3] General Statutes § 53-202k provides in relevant part: "Any person who commits any class A, B or C felony and in the commission of such felony uses . . . any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

disprove his justification defense beyond a reasonable doubt and (3) prosecutorial misconduct deprived him of his right to a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. From early 1997 through April, 1999, the defendant and his girlfriend, Torefto Young, lived together in a first floor apartment at 273 Sherman Avenue in New Haven. During that time, Young had an intimate relationship with the victim, Leander Vaughn, which ended in late 1998. Subsequently, Young remained friendly with the victim, who was also her coworker.

On April 26, 1999, the defendant and Young were both working night shifts at their respective workplaces. At around 3 a.m., Young decided to leave work early and so informed the defendant. Before leaving work, Young arranged for the victim to bring her marijuana when he left work around 7 a.m. After arriving at her apartment, Young called the defendant to let him know she was safe. She then received a telephone call from the victim, who also had decided to leave work early, and they agreed that he would stop by the apartment immediately. After that conversation, the defendant called Young and asked whether she had just called him at work. Young replied that she had not called him again. Unbeknownst to Young, the defendant recently had received two anonymous telephone calls indicating that he needed to get to the apartment immediately due to an emergency.

Shortly thereafter, the victim arrived at the apartment, still in his work uniform, and Young let him inside. The victim then handed her some marijuana and asked to use the bathroom. At that point, the defendant returned home, discovered the victim in the bathroom washing his hands and angrily questioned him about who he was and why he was in the apartment. Young

repeatedly attempted to calm the defendant and to iden-
tify the victim to him.[4] The defendant then went into
the bedroom and returned, brandishing a Taurus .357
magnum caliber revolver, which was loaded with .38
caliber jacketed, hollow point bullets. He yelled at the
victim to get out of the apartment while waving the gun
around and pointing it into the bathroom where the
victim was standing a few feet away. The victim did
not respond to the defendant's barrage of questions and
demands except to motion a few times with his hands.

Standing just outside the bathroom door, the defen-
dant then shot the unarmed victim once in the abdomen
and continued to yell at him. After quickly checking on
the victim, Young ran out of the apartment to seek
help from her aunt, who lived in the building, and the
defendant followed. Meanwhile, the victim managed to
exit the apartment into the backyard of the building.
Returning to the apartment, Young found the victim
outside and began to administer first aid to him. Young
also called the police. The defendant, still possessing
the weapon, continued to yell at the victim and
demanded that he leave the backyard. Following a short
argument with Young, the defendant went to his broth-
er's home nearby.

Dispatched at 4:32 a.m., the police found the victim
in the backyard inside a sport utility vehicle, which
he had somehow reached, clutching his abdomen. The
victim told the police that the defendant had shot him
while he was in Young's apartment. The victim then was
transported to a local hospital. The police subsequently

---

[4] During the trial, Young testified that the defendant should have recog-
nized the victim because he had seen Young and the victim a number of
times at her workplace. She also testified that the victim was wearing a
work uniform that the defendant should have recognized and that he knew
that the victim worked with Young. Young further stated that the defendant
did not personally know the victim otherwise. The defendant testified that
he had never seen the victim before.

searched the apartment, which revealed no evidence to suggest forcible entry or that a struggle had occurred inside, although a clothing hamper was found overturned in the bathroom.[5] Shortly thereafter, police arrested the defendant at his brother's home. On May 6, 1999, the victim died in the hospital, following severe complications arising from internal injuries caused by the shooting.

Following a jury trial, the defendant was found guilty of reckless manslaughter in the first degree with a firearm. Consequently, the court sentenced the defendant to serve fifteen years of imprisonment. In accordance with § 53-202k, the court enhanced that sentence by five years, to be served consecutively, for a total effective sentence of twenty years of incarceration.[6] This appeal followed. Additional facts and procedural history will be provided as relevant.

I

The defendant first claims that the court improperly violated his constitutional protection against double jeopardy by utilizing the sentence enhancement provided for under § 53-202k. We may dispose of that claim quickly because at oral argument defense counsel conceded, as he must, that this issue has been decided to the contrary by our Supreme Court in *State* v. *McMahon*, 257 Conn. 544, 558–62, 778 A.2d 847 (2001), cert. denied, 534 U.S. 1130, 122 S. Ct. 1069, 151 L. Ed. 2d 972 (2002). In *McMahon*, after a detailed analysis, our Supreme Court stated: "On the basis of the plain language of § 53-202k, its legislative history, and prior court decisions

[5] The defendant's testimony also supported that fact in that he stated that when he arrived at the apartment, he did not notice any damage to its doors, lock or windows.

[6] At trial, the defendant waived his right to have a jury, rather than the court, decide whether he was subject to a sentence enhancement under § 53-202k. The court ruled that the sentence enhancement was appropriate because the evidence produced at trial established beyond a reasonable doubt that the defendant's actions violated § 53-202k.

interpreting the statute, we conclude that the application of § 53-202k's sentence enhancement to manslaughter in the first degree with a firearm, a class B felony, does not violate double jeopardy." Id., 562. As we have stated before, "[w]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them." (Internal quotation marks omitted.) *State* v. *Thomas*, 62 Conn. App. 356, 364, 772 A.2d 611, cert. denied, 256 Conn. 912, 772 A.2d 1125 (2001). Accordingly, we find no merit to the defendant's double jeopardy claim.

## II

The defendant next asserts that there was insufficient evidence to sustain his conviction because the state failed to disprove his justification defense beyond a reasonable doubt.[7] In essence, he argues that there was

---

[7] At trial, the defendant asserted his version of events as follows: Hurrying home from work after two anonymous telephone calls indicating an emergency at home, the defendant entered his apartment and noticed that his bathroom door was closed. Although the defendant noticed no damage to the apartment's entryways, by that time he was scared. Upon pushing open the bathroom door, the defendant saw the victim, whom he did not recognize, in his bathroom washing his hands. Despite the fact that the victim appeared to be unarmed, the defendant then feared for his life and the life of Young when he saw the victim. Nevertheless, the defendant began yelling at the victim and questioning him as to who he was and why he was in the apartment. The victim did not respond. Then the defendant ran to his bedroom and into his walk-in closet, opened a case and retrieved a gun. Returning to the entrance of the bathroom, from which there was no other exit, the defendant yelled at and questioned the victim again and asked him to leave. Then the defendant intentionally shot the victim in the abdomen from a few feet away when the victim made a few hand motions. The defendant stated that the victim's presence in his bathroom caused him to believe that the victim was in his apartment for a criminal purpose, although no valuables or money were kept in the bathroom. Further, he testified that the victim's hand motions led him to believe that the victim might attack, injure or kill him or Young or that the victim was attempting to grab the gun away from him. The defendant also stated that he did not know that there was a substantial chance that the victim would die when he shot him at close range in the abdomen. Finally, the defendant admitted that he believed Young was cheating on him with the victim, but that he drew that conclusion only after the shooting took place.

sufficient evidence for him to have asserted success-
fully the justification that he had the right to use deadly
force against the victim in defense of premises under
General Statutes §§ 53a-16[8] and 53a-20.[9] We disagree.

"On appeal, the standard for reviewing sufficiency
claims in conjunction with a justification offered by the
defense is the same standard used when examining
claims of insufficiency of the evidence. Our Supreme
Court has stated: In reviewing [a] sufficiency [of evi-
dence] claim, we apply a two-part test. First, we con-
strue the evidence in the light most favorable to
sustaining the verdict. Second, we determine whether
upon the facts so construed and the inferences reason-
ably drawn therefrom the jury reasonably could have
concluded that the cumulative force of the evidence
established guilt beyond a reasonable doubt. . . . The
rule is that the jury's function is to draw whatever
inferences from the evidence or facts established by
the evidence it deems to be reasonable and logical."
(Citation omitted; internal quotation marks omitted.)
*State* v. *Brocuglio*, 56 Conn. App. 514, 517, 744 A.2d
448, cert. denied, 252 Conn. 950, 748 A.2d 874 (2000).

"In evaluating evidence, the trier of fact is not
required to accept as dispositive those inferences that

[8] General Statutes § 53a-16 provides: "In any prosecution for an offense,
justification, as defined in sections 53a-17 to 53a-23, inclusive, shall be
a defense."

[9] General Statutes § 53a-20 provides: "A person in possession or control
of premises, or a person who is licensed or privileged to be in or upon such
premises, is justified in using reasonable physical force upon another person
when and to the extent that he reasonably believes such to be necessary
to prevent or terminate the commission or attempted commission of a
criminal trespass by such other person in or upon such premises; but he
may use deadly physical force under such circumstances only (1) in defense
of a person as prescribed in section 53a-19, or (2) when he *reasonably*
believes such to be *necessary* to prevent an attempt by the trespasser to
commit arson or any crime of violence, or (3) to the extent that he *reasonably*
believes such to be *necessary* to prevent or terminate an unlawful entry by
force into his dwelling as defined in section 53a-100, or place of work, and
for the sole purpose of such prevention or termination." (Emphasis added.)

are consistent with the defendant's innocence." (Internal quotation marks omitted.) *State* v. *McMahon*, supra, 257 Conn. 566. Further, as we have often stated, "proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's] verdict of guilty." (Internal quotation marks omitted.) Id., 567. We are mindful as well that "[t]he state has the burden of disproving the defense of justified use of force . . . beyond a reasonable doubt. . . . Whether the defense of the justified use of force, properly raised at trial, has been disproved by the state is a question of fact for the jury, to be determined from all the evidence in the case and the reasonable inferences drawn from that evidence. . . . As long as the evidence presented at trial was sufficient to allow the jury reasonably to conclude that the state had met its burden of persuasion, the verdict will be sustained." (Internal quotation marks omitted.) *State* v. *Hallowell*, 61 Conn. App. 463, 469–70, 766 A.2d 950 (2001).

Relying on three decisions from our Supreme Court, the defendant argues that the evidence in this case supported a reasonable hypothesis consistent with his innocence and that we must conclude, therefore, that the state failed to disprove his justification defense beyond a reasonable doubt. The defendant bases his argument first on *State* v. *Morrill*, 193 Conn. 602, 610, 478 A.2d 994 (1984). The defendant's reliance on *Morrill* is misplaced, however, especially in light of the discussion in that case regarding the difference between a

reasonable hypothesis and a possible one. See id., 611. In *Morrill*, our Supreme Court explained how "the requirement of proof beyond a reasonable doubt does not mean that the proof must be beyond a possible doubt, and a possible hypothesis or supposition of innocence is far different from a reasonable supposition. . . . Emphasis needs to be placed on the distinction between the word 'reasonable' and the word 'possible.' . . . Proof of guilt must exclude every reasonable supposition of innocence . . . . [A] mere 'possible hypothesis' of innocence will not suffice." (Citations omitted; internal quotation marks omitted.) Id. Further, as we have reiterated here, we do not attempt to discern on appeal whether the evidence supported a reasonable hypothesis of the defendant's innocence, but rather whether the evidence supported the jury's verdict of guilty. See *State* v. *McMahon,* supra, 257 Conn. 567.

The defendant also relies on *State* v. *Sivri,* 231 Conn. 115, 131, 646 A.2d 169 (1994), to support his argument. That reliance also is inconsistent with our law. In *Sivri,* our Supreme Court made it clear, despite what may be derived from a literal reading of our principles regarding proof beyond a reasonable doubt, that "[i]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence." (Internal quotation marks omitted.) Id., 132.

For the same reason, the defendant's reliance at oral argument and in his reply brief on *State* v. *Carpenter,* 214 Conn. 77, 570 A.2d 203 (1990), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992), also is tenuous and unsubstantiated at best. At oral argument, the defendant contended that *Carpenter* stands for the proposition that if there is a reasonable scenario of facts that requires his acquittal, the jury

must find those facts and find him not guilty. The defendant further stated that *Carpenter* exposes an ambiguity in the appellate standard of review for sufficiency of the evidence claims. The principles of *Carpenter* are supplementary to our review of sufficiency claims, however, and "have their primary operation as rules of law for the guidance of the fact finder, rather than for the guidance of appellate courts in reviewing the sufficiency of evidence regarding the fact finder's verdict." *State* v. *Sivri*, supra, 231 Conn. 135. On the basis of the discussion in *Sivri* determining the implications of *Carpenter* and our own review of the evidence, we conclude that the principles of *Carpenter* are inapplicable here because there is a reasonable view of the evidence that met the state's burden of proof and that sustains the jury's verdict. See id., 130–37. Nothing in those three cases, therefore, could have precluded the jury in the present case from arriving at its verdict of guilty. In fact, quite the opposite is true.

The jury here was free to disbelieve the defendant's justification defense, as it obviously did, and to find that the evidence demonstrated his guilt beyond a reasonable doubt for manslaughter in the first degree with a firearm. See *State* v. *Adams*, 52 Conn. App. 643, 660, 727 A.2d 780 (1999), aff'd, 252 Conn. 752, 748 A.2d 872, cert. denied, 531 U.S. 876, 121 S. Ct. 182, 148 L. Ed. 2d 126 (2000). In short, the jury reasonably could have found the following: After receiving two anonymous telephone calls at work late at night, the defendant returned to the apartment that he shared with Young. Upon entering the apartment, which showed no signs of forcible entry or a struggle, the defendant discovered a man he recognized as Young's coworker in the bathroom washing his hands. Although Young repeatedly identified the victim to him, the defendant became angry over a perceived affair between the two, immediately retrieved a gun from his bedroom and confronted

the victim, whom he saw to be unarmed. Still yelling at the victim, who had remained in the bathroom, the defendant then shot him in the abdomen intentionally. Subsequently, the defendant continued to yell at the victim and argued with Young as she called the police and attempted to aid the victim, who had managed to exit the apartment. The defendant then fled to his brother's house nearby, and the victim died in the hospital ten days later.

Thus, construing the evidence presented at trial in the light most favorable to sustaining the verdict, we conclude that the evidence provided ample support for the jury's verdict. The jury reasonably could have concluded that the state met its burden of persuasion that the defendant was not justified in the use of deadly force in defense of his premises under any prong of § 53a-20. The defendant presented only a possible hypothesis of his innocence, which the jury clearly and reasonably discounted and which, therefore, is inadequate to support his sufficiency of the evidence claim. See *State* v. *Sivri*, supra, 231 Conn. 134–35. Moreover, we conclude that on the facts so construed and the inferences reasonably drawn from them, the jury reasonably could have found that the cumulative force of the evidence established the defendant's guilt beyond a reasonable doubt under §§ 53a-55a and 53a-55. Accordingly, the defendant's claim is without merit.

### III

Finally, the defendant contends that the prosecutor committed misconduct during closing argument by way of three improper and inflammatory comments in violation of the defendant's right to a fair trial. Specifically, the defendant argues that the prosecutor improperly expressed his personal opinion twice as to the defendant's intent and motive. The defendant further contends that the bias created by those personal opinions

was compounded as a result of the prosecutor's earlier attempt to have the jury consider what it would be like to be in the victim's place when the shooting occurred. We are not persuaded.

We first note that our review of the defendant's claims must be bifurcated because only one of them was preserved properly at trial by objection. See *State* v. *Lasky*, 43 Conn. App. 619, 625–26, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997). The defendant also requests review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), for his unpreserved claims regarding the two comments to which he did not object at trial. Accordingly, we review the defendant's claims of prosecutorial misconduct in two parts.

A

We first address the preserved claim. During closing argument, the prosecutor described what it would be like for the jurors if he were to point the defendant's loaded gun at them, shoot them in their abdomens and then have them die at a hospital. Defense counsel objected to that line of argument, and the court sustained the objection. Heedless of the court's ruling, the prosecutor went on to ask the jury to consider what his intent would have been if he had shot them as he had just described. Following the trial, defense counsel filed an amended motion for a new trial based on that alleged misconduct. On September 13, 2000, the court denied the motion and ruled that this aspect of the prosecutor's argument did not affect the jury. The court further ruled that sustaining defense counsel's objection was sufficient to cure any defect in the trial because "while there was no curative instruction . . . the jury was made well aware of the fact that [the prosecutor's argument] was not appropriate under the circumstances."

Our standard of review concerning properly pre-
served claims of prosecutorial misconduct is well set-
tled.[10] "[T]o deprive a defendant of his constitutional
right to a fair trial . . . the prosecutor's conduct must
have so infected the trial with unfairness as to make
the resulting conviction a denial of due process. . . .
We do not focus alone, however, on the conduct of
the prosecutor. The fairness of the trial and not the
culpability of the prosecutor is the standard for analyz-
ing the constitutional due process claims of criminal
defendants alleging prosecutorial misconduct. . . .

"In determining whether the defendant was denied
a fair trial we must view the prosecutor's comments in
the context of the entire trial. . . . In examining the
prosecutor's argument we must distinguish between
those comments whose effects may be removed by
appropriate instructions . . . and those which are fla-
grant and therefore deny the accused a fair trial. . . .
The defendant bears the burden of proving that the
prosecutor's statements were improper in that they
were prejudicial and deprived him of a fair trial. . . .
In determining whether prosecutorial misconduct was
so serious as to amount to a denial of due process, this
court, in conformity with courts in other jurisdictions,
has focused on several factors. Among them are the
extent to which the misconduct was invited by defense
conduct or argument . . . the severity of the miscon-

---

[10] We note that the defendant, while claiming prosecutorial misconduct,
calls for an abuse of discretion standard for his preserved claim based on
the court's denial of his amended motion for a new trial. After presenting
the instances of alleged misconduct, however, the defendant goes on to
brief his claim under the multifaceted standard of review for claims of
prosecutorial misconduct rather than under an abuse of discretion standard
related to his amended motion. We further note that in his statement of
issues, the defendant does not claim that the court abused its discretion,
but rather contends that the defendant was deprived of his right to a fair
trial by prosecutorial misconduct. Hence, because the defendant's true claim
is one of prosecutorial misconduct, the appropriate standard of review for
it is that which we apply to claims of prosecutorial misconduct.

duct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted; internal quotation marks omitted.) *State* v. *Jefferson,* 67 Conn. App. 249, 266–67, 786 A.2d 1189 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002). We also note that "[p]rosecutorial misconduct can occur in the course of closing argument." Id., 266. Further, although we recognize that a prosecutor may not appeal to the passions or prejudices of a jury; *State* v. *Dillard,* 66 Conn. App. 238, 247, 784 A.2d 387, cert. denied, 258 Conn. 943, 786 A.2d 431 (2001); counsel must be afforded a generous degree of latitude in the heat of argument. *State* v. *Conde,* 67 Conn. App. 474, 501, 787 A.2d 571 (2001), cert. denied, 259 Conn. 927, 793 A.2d 251 (2002).

Although we agree that the shooting scenario presented to the jury by the prosecutor was improper, we cannot conclude that the remarks so infected the trial with unfairness as to deprive the defendant of his right to a fair trial. That scenario clearly was improper because a prosecutor is not permitted to stir the passions of the jury. See *State* v. *Dillard,* supra, 66 Conn. App. 247. Although the misconduct here does not appear to have been invited by defense counsel, it was an isolated and brief instance. Similarly, although the misconduct centered on the key issue of the defendant's intent, we conclude that when the court sustained defense counsel's objection to the argument, the jury was admonished sufficiently not to consider the prosecutor's statements as appropriate argument bearing on the case. We also note that the court generally instructed the jury to discount personal opinions, prejudices and sympathy in its deliberations. Moreover, our thorough review of the transcript and record reveals that the state presented a strong case against the defen-

dant. In the context of the entire trial, therefore, we conclude that the inappropriate remarks do not rise to a level of prosecutorial misconduct that denied the defendant his right to due process or otherwise require the reversal of his conviction. See *State* v. *Downing,* 68 Conn. App. 388, 399–405, 791 A.2d 649, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002).

## B

The defendant's remaining unpreserved claims of prosecutorial misconduct involve two comments concerning the defendant's intent and motive during the shooting. First, during closing argument, the prosecutor commented that "as far as the state is concerned, [the defendant's] intent at the time that he fired that fatal shot was to kill Mr. Vaughn." Later in his argument, the prosecutor stated, "Now, there is a very simple reason why Mr. Leander Vaughn is dead today . . . and that is jealousy. That's why the defendant shot him and that's why Mr. Vaughn is dead." The defendant did not object to either of those remarks during or at the close of the prosecutor's argument. The defendant also conceded in his appellate brief that other than the prosecutorial misconduct he alleges to have occurred during closing argument, there was "scarcely a hint of it during the trial."

The defendant seeks *Golding* review for his unpreserved claims, as he must, because he failed to object to the comments at trial or to request a curative charge. See *State* v. *Lacks,* 58 Conn. App. 412, 421–22, 755 A.2d 254, cert. denied, 254 Conn. 919, 759 A.2d 1026 (2000). When one fails to do either of those, "we have presumed that defense counsel did not view the remarks as so prejudicial that his client's right to a fair trial was seriously jeopardized." (Internal quotation marks omitted.) Id., 422. Under *Golding,* "a defendant can prevail on a claim of constitutional error not preserved at trial only

if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two steps in the *Golding* analysis address the reviewability of the claim, while the last two steps involve the merits of the claim. . . . The appellate tribunal is free . . . to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original; internal quotation marks omitted.) *State* v. *Iannazzi*, 68 Conn. App. 456, 465–66 n.2, 791 A.2d 677 (2002).

We have long held, however, that *Golding* review of such a claim will not result in reversal "where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial . . . because in such a case the claimed misconduct is insufficient to infect the fundamental fairness of the trial itself." (Internal quotation marks omitted.) *State* v. *Lacks*, supra, 58 Conn. App. 422. "In determining whether a prosecutor's conduct was so egregious as to deny a defendant a fair trial, we note that some leeway must be afforded to the advocates . . . ." (Internal quotation marks omitted.) *State* v. *Duteau*, 68 Conn. App. 248, 259, 791 A.2d 591, cert. denied, 260 Conn. 939, 835 A.2d 58 (2002). Furthermore, in considering the defendant's prosecutorial misconduct claim, "we ask whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Internal quotation marks omitted.) Id.

A thorough review of the transcript and record compels us to conclude that neither of the prosecutor's comments on the defendant's intent and motive so infected the trial with unfairness as to deny the defendant his right to a fair trial. See id. Although we recognize that a prosecutor may not inject his personal opinions into closing argument, the defendant has failed to carry his burden of demonstrating that the challenged comments were improper, let alone so prejudicial as to deny him a fair trial. See *State* v. *Lacks*, supra, 58 Conn. App. 424. Even if we assume that the prosecutor's statements were improper, in the context of the entire trial, they were isolated and brief and did not constitute a pattern of misconduct that was blatantly egregious, that pervaded the trial or violated the defendant's right to a fair trial. See *State* v. *Duteau*, supra, 68 Conn. App. 260. Accordingly, the defendant's claim fails to meet the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.